No. 24,082.

THE STATE OF KANSAS, *Appellee*, v. HENRY SCHALANSKY, *Appellant*.

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Arson—Burning of Wheat Stacks—Evidence—Action of Bloodhounds—Instructions*. In a prosecution for burning stacks of wheat belonging to one of defendant's brothers, evidence was introduced showing the action of bloodhounds in following a trail from near the scene of the fire to defendant's dwelling a mile distant; and evidence of ill feeling, bitterness and threats of defendant toward his brother. A few nights after the fire in question another fire occurred which destroyed a barn situated five miles or more distant from the defendant's residence and belonging to another of his brothers. The same bloodhounds were used again and started from a point near the place of the second fire, where a horse had apparently been tied, and they proceeded to follow a trail which went directly to the premises of the defendant. An instruction charged that the only purposes for which the jury could consider the evidence relative to the subsequent fire "are such portions of that evidence which will help you to determine the reliability or unreliability of the dogs"; and the feeling, if any, existing between the defendant and the brother whose stacks were burned. *Held,* that the evidence of the actions and conduct of defendant following the first fire, and of his ill feeling toward and threats against the owner of the stacks, together with other circumstances commented upon in the opinion, was sufficient to sustain the giving of the instruction; and *further held,* that while the instruction would more appropriately have read "may help you to determine," etc., the jury could not have been misled by the language used.

2. SAME—*Instructions—Circumstantial Evidence*. Certain instructions considered, in which the court restricted the scope of evidence showing the action of bloodhounds in following the supposed trail of the defendant from the scene of the first fire. *Held,* that the instructions are not to be construed to mean that in order to identify the tracks as those of the defendant, it was necessary to produce positive or affirmative evidence that they were made by him; and *further held,* that any or all of the essential facts in such a case may be shown by circumstantial evidence, which, if sufficient to convince the jury beyond a reasonable doubt, satisfies the law.

3. SAME—*Evidence Sustains Conviction of Arson in Fourth Degree*. Evidence examined and held sufficient to sustain a conviction of arson in the fourth degree.

Appeal from Smith district court; WILLIAM R. MITCHELL, judge. Opinion filed October 7, 1922. Affirmed.

*F. W. Mahin, R. M. Pickler,* both of Smith Center, and *W. E. Mahin,* of Norton, for the appellant.

*Richard J. Hopkins,* attorney-general, and *Miles Elson,* county attorney, for the appellee; *A. W. Relihan,* and *T. D. Relihan,* both of Smith Center, of counsel.

The opinion of the court was delivered by

PORTER, J.: The defendant was convicted of arson in the fourth degree and sentenced to confinement in the county jail for one year and to pay the costs of the prosecution. He appeals.

The defendant is a brother of Edd Schalansky and Charlie Schalansky who lived in the same neighborhood, and all of them are farmers. On Saturday night, the 18th of September, 1920, a fire occurred which burned up four stacks of wheat belonging to Edd Schalansky. The stacks were in an open field about a mile on a direct line from the defendant's dwelling. The evidence showed that Edd Schalansky and his family had been in the habit of going to town on Saturday nights, and that on this occasion they went to a picture show; that the fire was discovered about two hours after they left home. Mr. Hain, a banker, who was also an insurance agent and had written a policy covering the burned wheat, and some other persons interested in an investigation, sent for bloodhounds, which arrived on Sunday evening following the fire. The dogs were put upon the trail near one of the burned stacks. It was then dark; the dogs started to go south through the stubble and crossed a strip of plowed ground six or eight feet wide. The owner of the dogs, who was in charge of them, stopped the dogs and told the bystanders to have an automobile brought up to this strip of plowing and that he would show them a track which the dogs were following. A car was driven up, the lights thrown upon the plowed strip, and the track of a man's foot was found in the plowed ground. When the dogs were loosed they went directly over this track, and continuing to follow an apparent trail went to the dwelling house of the defendant. When he came to the door the dogs smelled of his feet, looked up at him and the evidence tended to show that they refused to work further. One week after this fire the barn of Charlie Schalansky was burned and he sustained the loss of $8,000 or more. The barn was situated five or six miles from the defendant's house. The same dogs were sent for again and were started from a post near where the barn had stood and at which a horse had apparently been tied. The dogs proceeded to follow a trail which led over roads and hills direct to defendant's dwelling. He was there at the time and he had white horse hairs on his overalls and there was a white horse in his pasture. The state contended that he had used the horse to get to Charlie Schalansky's barn and return to his home.

There was evidence of bad feeling upon the part of Henry Schalansky against his brother Edd. The latter had bought a farm from the defendant, giving as part of the purchase price a mortgage for $9,000, which the defendant attempted to foreclose, and it became a question of fact whether one of the coupon notes had been paid; a jury determining that it had been. On appeal the judgment in Edd's favor was affirmed at the January, 1920, term. (*Schalansky v. Schalansky,* 106 Kan. 621, 189 Pac. 367.) The evidence of the state was to the effect that Henry went to Chicago, and just before leaving he told Edd that he would get even with him if it took him twenty years to do it. Within a month after his return the wheat was burned. The mother of the boys testified that she told the defendant about the fire and he said to her in substance, "They are going to push it on me," and that when the dogs came he said, "They push it on me." The evidence also showed that the defendant manifested much interest in discovering whether the wheat that was burned was insured, and he inquired of Mr. Hain, who wrote the insurance; further, that a day or two after the first fire he went to the stubble field and gathered samples of some of the poorer wheat, which he used at a former trial of this case to show that the wheat that burned was poor and overinsured. On the present trial he was a witness and testified, "I went to look at the track on Tuesday, . . . Man that made track might have had one toe off. . . . I was not trying to make it appear like Edd burned the stacks." The evidence showed that his brother Edd had lost the great toe from the left foot.

The first complaint relates to instruction No. 21, which reads:

"The only purposes for which you can consider the evidence introduced in this case relative to the fire at the home of Charles Schalansky are such portions of that evidence which will help you to determine: The reliability or unreliability of the dogs. The feeling, if any, existing between Edd Schalansky and the defendants."

It is argued that there was no evidence upon which this instruction could be based; nothing to show any joint venture in which Charles and Edward were interested; no evidence that Edward had any interest in the barn, nor to show any bad feeling between defendant and Charles, and that Charles testified there had been no trouble between them up to this time.

In other words, the argument is that evidence of the commission of another crime at a subsequent time is incompetent to prove the

existence of any element entering into the crime charged in the information. The court, in substance, told the jury it could only be considered so far as it might help them to determine the reliability or unreliability of the dogs and the feeling, if any, existing between the defendant and the owner of the stacks. This was the purpose for which the state introduced it. Evidence had been offered by the state to show that the defendant had such ill feeling and animosity toward his brother Edd, that he sought to show a motive on the part of his brother to burn his own stacks, and in this connection the state claimed that he burned the barn belonging to another brother in the hopes that suspicion of that burning would fall upon his brother Edd. Evidence of his bitter feeling toward his brother Edd and Edd's wife; proof of his threat that he would get even with his brother if it took him twenty years to do it; and circumstances tending to show his desire to have suspicion of the first fire directed to his brother Edd, were enough, in our opinion, to sustain the giving of the instruction.

Another objection is urged because the court referred in the instruction to such portions of the evidence as "will help you to determine," etc. The use of the word "may" would have been more appropriate, but we do not think the jury were misled by the language used.

It is said that the verdict is contrary to the law of the case as given by the court. In instruction No. 20, the court charged that, "unless you find the tracks, if any, followed by the dogs to the home of the defendant were in fact made by him, you should disregard all evidence of the actions of the dogs in arriving at your verdict." In several other instructions the court told the jury that if the dogs used for trailing had been shown to be certain, accurate and reliable, the following of human tracks to and upon the premises of the defendant would be competent as tending to show that the person making the tracks had been at the scene of the fire, "still this would not alone be sufficient to justify you in finding that the tracks, if any, followed by the dogs were the tracks of the defendant, without some sufficient evidence of identification or other evidence sufficient to show that he had made them."

In another instruction the court referred to the fact that evidence had been introduced tending to prove that bloodhounds were put on the trail believed to have been made by the guilty person and that

The State v. Schalansky.

the dogs followed the trail a considerable distance to the home of the defendant, but in the same instruction the jury were told that "this alone would not be sufficient evidence upon which you could find the defendant guilty  .  .  .  but is to be considered by you as a circumstance, together with all the other evidence, and circumstances in this case, in determining whether the defendant is or is [not guilty] of the offense imputed to him."

In defining the function of circumstantial evidence the court gave the usual instruction with reference to the necessity of proving every single chain, and charged that "each essential fact in the chain of circumstances must be found to be true by the jury beyond a reasonable doubt, to warrant a conviction"; and that one of the essential facts here was that the tracks leading from the burned stacks "and which it is claimed the dogs followed were made by the defendant," and the jury were admonished further that unless they found "that such tracks have been identified as tracks made by the defendant, and that such identification has been proven beyond a reasonable doubt, there would be a failure to establish one of the necessary essential facts."

Of course, the court did not mean, and it is not the law, that in order to identify the tracks as made by the defendant it would be necessary to produce positive or affirmative evidence, such as evidence of some one who saw the tracks made, or affirmative evidence of measurements showing conclusively that they were made by the defendant.  Any or all of the essential facts in such a case may, of course, be shown by circumstantial evidence, and if sufficient to convince the jury beyond a reasonable doubt, the law is satisfied. (*The State v. Adams*, 85 Kan. 435, 116 Pac. 608; *The State v. Mooney*, 93 Kan. 353, 354, 144 Pac. 228; *The State v. Sweet*, 101 Kan. 746, 168 Pac. 1112.)   The contention, therefore, that the verdict and judgment is contrary to the law of the case cannot be sustained.

Most of defendant's brief is taken up with an argument more appropriate to a jury in an effort to show that the circumstances in evidence established the innocence rather than the guilt of the defendant.  In our opinion there was sufficient evidence to sustain the conviction.

We find no error in the record, and the judgment is affirmed.