BOATWRIGHT *v.* STATE.*

(Division A.    Oct. 4, 1926.)

[109 So. 710.    No. 25295.]

1. CRIMINAL LAW.

No order having been made disposing of demurrer to indictment as charging in one count assault on two, and defendant not having objected to order permitting amendment by striking out one of the names, there is nothing for review in respect thereto.

2. CRIMINAL LAW.

There was no abuse of discretion in overruling motion for postponement or continuance for witness only five hours' train ride distant, case having been passed from day to day for five days.

3. CRIMINAL LAW.

On prosecution for shooting at officers, when they were attempting to arrest defendant for then having in his possession and in their presence kegs of whiskey, such articles are part of the *res gestae.*

4. CRIMINAL LAW.

General objection to bloodhound testimony, of "no proper predicate," is not sufficient for review on the ground that there should have been a showing of proper training and pedigree of the dogs.

---

*Corpus Juris-Cyc References: Criminal Law, 16CJ, p. 458, n. 76; p. 489, n. 11; p. 574, n. 56; p. 825, n. 85; 17CJ, p. 55, n. 98 New; p. 58, n. 17; p. 74, n. 87; Discretion of court as to continuance to procure absent witness, see 6 R. C. L. 556; 2 R. C. L. Supp. 154; 4 R. C. L. Supp. 425; 5 R. C. L. Supp. 355.

APPEAL from circuit court of Lauderdale county.

HON. R. M. BOURDEAUX, Judge.

Son Boatwright was convicted of assault with intent to kill, and he appeals. Affirmed.

*Jacobson & Brooks,* for appellant.

I. The first assignment of error complains of the action of the court in not granting to the appellant a postponement of the cause until a later day in the term, so that he could have the personal attendance of the witness Thelma Walker. It is the settled law of this state that continuances should be addressed to the sound discretion of the court. The courts have been admonished, however, that this discretion should be exercised with care and that they should be cautious in denying a request a postponement until a later day in the term.

Thelma Walker was the one person who knew that this man was at her house that night. The other witnesses could only prove by facts and circumstances. The

court is advised here that we did not ask for a continuance for the term, but we only asked for a delay of the case for two or three days until we could satisfy ourselves as to whether or not we could secure the presence of Thelma Walker.

Appellant did not just state that this woman was in Birmingham and lived there. He stated the woman's address to be 1105 Seventh avenue, Birmingham, Alabama, and it was shown further that on the evening of August 6, 1925, that the appellant's mother sent a telegram to the said Thelma Walker for her to come to Meridian that night for court tomorrow, necessary for her to be there and requested answer. The appellant was pushed into trial with that telegram outstanding and with the application for a continuance overruled. We submit that under the facts and circumstances, as shown by the record, there was an abuse of discretion to such an extent that justifies us in urging a reversal of this case.

II. The court also erred in permitting the officers of the prosecution to bring in and exhibit during the trial of this case three kegs of intoxicating liquors. There was no prohibition question involved in this cause. It is true at the time the officers claimed that when the appellant shot at them that he was in the act of getting some liquor which had been thrown off the train. This does not justify the exhibition of liquor on the trial of assault and battery with intent to kill and murder.

III. Another error was in permitting the testimony of witness Jenkins as to the bloodhounds. We contend that in order to make Jenkins' testimony as to the conduct of the bloodhounds competent, there should not only have been testimony as to the pedigree of these dogs, and as to their being accustomed to running, tracking, and trailing human beings, but that there should have been testimony that they had been trained properly and correctly.

For these several reasons, we submit that the case should be reversed and remanded.

*J. L. Byrd,* Assistant Attorney-General, for the state.

I.  Appellant first complains of the error of the court in not sustaining the demurrer to the indictment in this cause.  The indictment charged the appellant with knowingly shooting at policemen Danner and Parnell, and was demurred to on the ground that it contained but one ground and charged two crimes.  We do not find any order of the court on this demurrer, but we do find at page twenty-two of the record where the indictment was amended so as to read "with intent to kill and murder one E. Danner" instead of A. C. Parnell and E. Danner. We take it that this was a confession of the demurrer and an amendment by the state to meet the demurrer. We submit that this is regular and in due form, and counsel for appellant cites no authority and takes no point on the fact that this was irregular or not permissible.

II.  Appellant made a motion for a continuance on the ground of the absence of a material witness, Thelma Walker.  The court overruled the motion and we think rightly so, for the reason that the motion shows on its face that the witness was a nonresident of the state, and there was no showing whatever that she would ever be back in this state or subject to the jurisdiction of the court; and the record further shows that the appellant had telegraphed her at least twice and that no response had been made by her and that it was safe to infer that she never could have been gotten back to Meridian.  This case was continued from day to day during the term to permit the appellant to secure the presence of the witness.  Birmingham was only about one hundred and fifty miles from Meridian, about a five-hour ride and that notwithstanding the fact that the defendant, appellant

here, had an entire week to get the witness back from Birmingham, she did not come.

III. Complaint is made about the prosecution bringing in and exhibiting during the trial of the case the three kegs of intoxicating liquor. We think that there was no error in this, for the reason that the testimony showed that appellant was carryng the liquor at the time the difficulty arose and that it was part and parcel of the original crime and if not that, it was so connected with it as to become part of it. Besides, the attention of the jury was first called to the liquor by the appellant.

IV. Objection is made to the testimony of J. S. Jenkins, who testified that on the night of the shooting he carried two dogs, bloodhounds, to the place where the appellant was said to have stood during the shooting; that these hounds were pure bred and trained to track human beings; that he had had five years of experience in handling the dogs; and that they were well trained to track human beings, then describing the manner in which they were handled and testifying that the manner in which they were handled was the usual and customary way. He further testified that he got to the place of the shooting and put the dogs on the trail about an hour after the shooting occurred.

We are not unmindful of the ruling of this court in the case of *Harris* v. *State,* 108 So. —; but we submit that the record in this case shows that the state has met all the requirements for the admission of testimony with reference to bloodhounds which the court laid down in the Harris case.

We submit that the only questions in the case were questions of fact and that the jury decided these questions adversely to the appellant.

McGOWEN, J., delivered the opinion of the court.

In the circuit court of Lauderdale county appellant was convicted of assault with intent to kill and murder, and sentenced to the penitentiary for ten years.

The indictment charged that the assault with intent to kill and murder was upon one "A. C. Parnell and Ernest Danner, by then and there discharging a deadly weapon, to-wit, a pistol, at and toward the said A. C. Parnell and Ernest Danner, with the willful and felonious intention and in a willful and felonious attempt them, the said A. C. Parnell and Ernest Danner, to unlawfully, willfully, feloniously, and of his malice aforethought to kill and murder."

To this indictment defendant interposed a demurrer, the second ground of which is in this language:

"Because said indictment, having only one count in the same, charges two offenses, in that it charges an unlawful, willful, and felonious assault upon both A. C. Parnell and Ernest Danner."

The record contains no objection or exception to this amendment. Neither does the record show that the court ever took any action upon the demurrer, which, likewise, was filed on August 7, 1925, and no effort on the part of the defendant to have the demurrer disposed of; nor does it appear that the court had called to its attention the demurrer, save and except what may be inferred from the amendment permitted by the court's order.

When the case was called for trial, the state having announced ready, defendant made a motion for a continuance, and undertook to have the case passed also because he said that Thelma Walker, a material witness living in Birmingham, Ala., at 1105 Seventh Avenue, was not present although he had made due and diligent effort to secure her presence; that her testimony was material; and that she would swear, if present, that Boatwright, the defendant, was actually present in her home, two miles from the scene of the alleged shooting, and that he was there from about the time of the shooting until five o'clock the next morning, and because of the distance of her home from the scene of the shooting it would have been impossible for him to have been present and participated in the shooting affray. Defendant said that these

facts were material to establish a complete *alibi;* that he had no other witness by whom he could prove these facts so fully; that he did not employ a lawyer under August 6th, the trial being on the 7th, and that his lawyer did not understand that Thelma Walker was imperatively needed as a witness until that time; that they had wired Thelma Walker to come to Meridian immediately, but that they had had no answer for her, and concluded his affidavit for the passing of the case, or its continuance, by saying that he believed that he would be able to have her in court the next week.

The court, in passing upon this motion for the postponement or continuance of the case, said that the case was set for trial on Monday, and the defendant and his family were notified and the court was advised by the circuit clerk that the lawyer in Birmingham was notified by wire that the case would be called Monday for trial. On that day, when the case was called, the defendant being without counsel, he was directed to furnish the clerk with a list of his witnesses, and advised by the court that he would have to go to trial and that he had better procure counsel; that further time was granted on Monday; that the case had been called every day during the week and was then being tried, on Saturday, the sixth day of the court; that Birmingham was only about five hours' ride from Meridian, where the case was being tried.

Briefly stated, the facts attendant upon the shooting are about as follows:

Two police officers, Parnell and Danner, and several constables had repaired to a point about two miles southwardly from the city of Meridian, where they had information that whisky had been thrown from a train before, and would be on that night thrown from train No. 2, going northwardly, toward Meridian. So arranging themselves in two groups, the two police officers, Parnell and Danner, being together, they stationed themselves on the right of way forty or fifty feet from the railroad track, to await the coming of the train about eleven o'clock on

the night of the 20th of June, 1924; that when the train passed, they saw a negro named Hezekiah Clay throw three kegs of whisky off of the front vestibule of the negro coach, and immediately after the train had passed, which was running about twenty or twenty-five miles an hour, the defendant appeared upon the scene, passing on to where one keg of whisky was, which was farther away from them; that the defendant took up the keg of whisky and carried it away on his shoulder, and was gone seven or eight minutes; that the two officers then moved down in close proximity to the second keg, and when the defendant came back he came toward where the second keg had landed, and stopped. The officers, thinking he had discovered them, arose, flashed their flashlights upon him, and ordered him to throw up his hands and consider himself under arrest. To this order of the officers the negro responded by firing several shots at the officers. Officer Danner claimed that he was shooting at him (Danner). The officers responded to the negro's shots with a volley, each of them discharging his gun. No one was wounded. The negro ran off toward the mountains.

Later, the sheriff was summoned, and Jenkins and two bloodhounds were placed upon the trail. Both officers testified that they recognized the defendant, Son Boatwright; that they knew him; and that he was the one who discharged the shots at Danner on that occasion. The bloodhounds trailed toward the mountains in the direction which the officers said their assailant had gone, and finally, at four o'clock in the morning, they trailed to the home of defendant's mother, about a block and a half from Thelma Walker's house, where the defendant says he was living with Thelma Walker in concubinage.

Defendant objected to the testimony of Jenkins, the man in charge of the dogs, as to the action of the dogs, his objection being by general objection, until the conclusion of the examination when the objection was made more specific by saying that the "proper predicate" had not been laid for the introduction of the bloodhound tes-

timony. Thereupon the court asked counsel to specify in what particular the predicate had not been laid, and, responding, no specific objection to the predicate for the introduction of the bloodhound testimony was offered the court, by defendant's counsel.

The defendant offered several witnesses, which, if believed by the jury, did establish an *alibi* for the defendant, but the defendant was not arrested until some months thereafter, when he was arrested by the officers in Birmingham, Ala., and returned to Mississippi for trial. The negro said he ran because he was scared; that he had heard two carloads of policemen were looking for him. He denied emphatically all knowledge of the crime.

The first assignment of error is as to the demurrer. As the court made no order disposing of the demurrer, and defendant did not object to the order permitting the indictment to be amended, we take it there is nothing in the point now that the indictment was amended so as to strike out the name of A. C. Parnell. No reason or authority is cited to us for considering this point in this state of this record.

Second, as to the motion for a continuance or postponement of the case, it was shown that Thelma Walker resided in Birmingham, Ala., within five hours' train ride of the place of trial; that the case was passed from day to day, from Monday until Saturday, and we do not think there was any abuse of the sound judicial discretion vested in the circuit judge in overruling this motion for postponement or continuance, and we cannot predicate reversible error upon the court's failure to grant further time.

The error predicated upon the bringing of three large kegs of intoxicating liquor before the jury, thereby tending to show the commission of a separate offense or a distinct crime, was not error in this case for the record shows that defendant counsel called attention to the fact that there were three kegs of liquor, which he presumed to be whisky, and objected to this "stuff" being before

the jury. So that whatever harm there was in the jury's seeing the kegs of liquor was first emphatically called to the attention of the jury by the defendant himself before a word of testimony had been introduced.

However, we think it was proper to introduce these kegs of liquor in evidence in this case because the state's theory was that this defendant shot at the officers when they were undertaking to arrest him for having in his possession a keg of liquor, a crime committed in their presence, and, without citing authorities, this is one of the cases in which the two crimes are so interlocked as that the kegs of liquor were a part of the shooting affray, and in explanation of what led to it, and the answer is twofold: First, that defendant counsel himself called attention to the kegs of whisky before the trial started; and, second, the kegs of whisky which the defendant was busily engaged in taking into his possession at and immediately before the time of the shooting clearly make the kegs of whisky a part of the *res gestae* of this case.

Council cites no authority, but is very insistent that these kegs of whisky were damaging to the defendant's interest. However much or little it may have damaged defendant's interest, we do not see anything improper in the introduction of these articles before the jury. They tended to show the commission of the crime for which the officers were trying to make the arrest, which crime they said was committed in their presence by this defendant, Boatwright, whom they identified positively.

The objection to the testimony of J. S. Jenkins as to the trail of the dogs from the scene of the crime, about the mountains, and to the home of defendant's mother, raises the question that there should have been testimony showing the proper training and pedigree of these dogs. Our views upon this question have been recently restated and are aligned with the well settled views years before set out by this court; but when the trial court called upon counsel to specify in what particular he objected to the testimony and in what particular the predicate had not

been laid, counsel did not then point out to the court, as we think he was called upon to do, his ground of objection to the testimony offered.

It is unnecessary for us to again bring forward the many opinions of this court holding that general objections to testimony will not be sufficient to secure from this court rulings upon particular points urged here which were not presented to the lower court. The question of the weight of the bloodhound testimony in this case was for the jury entirely, in view of the testimony of the defendant and his several witnesses on his *alibi*.

Upon the whole record we are convinced that the defendant has had a fair and impartial trial, and that the issue of whether he was the man who committed the crime has been fairly submitted to the jury, and we do not think this record contains any evidence that any injustice was done defendant in any of the rulings of the court below, and if the defendant did fire his automatic pistol at the officers of the law in the discharge of their duty in undertaking to arrest him for the commission of a crime, he should be punished therefor. The jury have found that the identification was complete, which was practically the only issue presented to them, and we see no reason to disturb it.

*Affirmed.*