CHARLIE DAVIS, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

1. An indictment under chapter 4405, acts of 1895, for the breaking and entering of a dwelling with intent to commit a felony which charges in the same count that the accused was then and there armed with a dangerous weapon and made an actual assault upon a person lawfully in such dwelling, is not duplicitous, nor is such an indictment bad on motion to quash even though the allegations with respect to the dangerous weapon are insufficient, if the allegations with respect to the assault are not defective.

2. Under chapter 4736, acts of 1899, circuit courts have power to direct the summoning from the body of the county of jurors to form a grand jury, where the grand jury in attendance has been discharged by reason of irregularities in summoning its members. Such discharge is a quashal of the panel within the meaning of that statute.

3. Testimony as to the action of dogs in following the trail of a supposed criminal from the scene of a crime is admissible in evidence, provided such preliminary proof be given of the qualities and training of the dog as to show that reliance may reasonably be placed upon its accuracy in following the trail of a human being.

4. It is not error to refuse to give instructions substantially covered by the general charge of the court.

5. It is error to refuse a request correctly defining the term "reasonable doubt," where no definition thereof is given in the general charge of the court.

6. It is not error to refuse instructions not applicable to any evidence in the case.

This case was decided by Division B.

Writ of error to the Circuit Court for Dade county.

The facts of the case are stated in the opinion of the court.

*M. D. Price* for plaintiff in error.

*J. B. Whitfield,* Attorney-General, for the State.

COCKRELL, J.—Charlie Davis was indicted in one count for breaking and entering a dwelling house with intent to commit the felony of larceny. The indictment charged that at the time of such breaking and entering the defendant was armed with a dangerous weapon and also that he made an actual assault upon a person who was lawfully in said dwelling. He was convicted and sentenced to life imprisonment.

A motion to quash the indictment was overruled. The grounds of the motion insisted on here are that the indictment is duplicitous and that the weapon is not so described as to make it as matter of law a dangerous weapon. Under the statute, chapter 4402, laws of 1895, the maximum penalty for burglary is fixed at imprisonment in the State prison for life, if the burglar "be armed with a dangerous weapon at the time of breaking and entering, or if he arm himself within such building, or if he make an actual assault upon any person lawfully therein;" while a lighter penalty

is inflicted in the absence of such arming and assault. The arming and assault are each mere aggravations of the offense. Either or both when committed by one while engaged in committing the same burglary subject the offender to the same punishment. They are distinct acts but connected with the same general offense. Under the statute it is permissible for the indictment to allege in a single count that the defendant did as many of the aggravating acts as the pleader chooses, and it will not be double, but will be established at the trial by the proof of any one or all of them. Being guilty of all he violates the statute but once, yet he violates the statute equally when he is guilty of but one. *Bradley v. State,* 20 Fla. 738; *Smith v. State,* 40 Fla. 203, 23 South. Rep. 854; 1 Bish. New Crim. Proc., sec. 436.

On the motion to quash we need not consider the sufficiency of the allegation as to the dangerous character of the weapon used. Should the terms used be insufficient to show a breaking and entering while armed with a dangerous weapon, the indictment would still be good as charging the breaking and entering and an actual assault while in the commission of the burglary, which is a complete charge of the crime. The motion to quash was properly overruled.

The defendant pleaded in abatement as follows: "That on the 9th day of February, A. D. 1903, in the Circuit Court in and for Dade county, Florida, sitting in an adjourned session from the fall term, thereof, A. D. 1902, a grand jury composed of seventeen jurors drawn from a box by the clerk of the Circuit Court on January 27th, 1903, after due notice as required by law, was empanelled and sworn by the court; that on the 12th day of February, A. D. 1903, said grand jury were discharged by the court on the ground that said grand jury were not drawn from the box fifteen days before court; that immediately thereafter, to-wit: a new grand jury, composed of sixteen members of the first grand jury and two new ones who were bystanders summoned by the sheriff, was duly empanelled and sworn; that

only nineteen jurors were summoned on the second venire, out of which eighteen were accepted and sworn as jurymen; that each of said grand juries were summoned, empanelled and sworn to diligently enquire and true presentment make to any and all matters which might be brought to their attention during the February term of court; that the names of the jurors composing the second or last grand jury were not placed in the box or drawn therefrom; neither was any legal notice given that said grand jury would be drawn, summoned, empanelled or sworn; that the indictment to .which the defendant is now required to plead was found by said second grand jury so empanelled for the February term of court, that said second grand jury so summoned and sworn was illegally empanelled, and the indictment returned by them is a nullity. Wherefore this defendant prays the judgment of the court whether he shall be required to plead further herein."

Pleas in abatement setting up mere irregularities in the selection of jurors should be drawn with the greatest accuracy and precision and must be certain to every intent. There is no showing that any of the jurors were not in all respects qualified as such. The discharge of the former grand jury amounted in law to a "quashal" of such jury, and the act of 1899, chapter 4736, as construed by this court in Ford v. State, 44 Fla. 421, 33 South. Rep. 301, authorized the court to have summoned from the body of the county the jurors from whom was selected the grand jury that found this indictment. There was no error committed in sustaining a demurrer to the plea in abatement.

Testimony was admitted over the defendant's objection as to the action of two dogs in following the supposed trail of the burglar from the scene of the crime. As this case is to be reversed on another point, we need not determine its admissibility, but think it proper to notice certain requirements in the introduction of such evidence. The adjudged cases on this point are few but uniform in admitting such evidence

under proper conditions. *Pedigo v. Commonwealth,* 103 Ky. 41, 44 S. W. Rep. 143, 42 L. R. A. 432, S. C. 82 Am. St· Rep. 566; *Hodge v. State,* 98 Ala. 10, 13 South. Rep. 385; ·*Simpson v. State,* 111 Ala. 6, 20 South. Rep. 572. But in order that such testimony be admissible there must be preliminary proof of such character as to show that reliance may reasonably be placed upon the accuracy of the trailing attempted to be proved. There should first be testimony from some person who has personal knowledge of the fact that the dog used has an acuteness of scent and power of discrimination which have been tested in the tracking of human beings. The intelligence, training and purity of breed are all proper matters for consideration in determining the admissibility of such evidence, as is also the behavior of the dog in following the track pointed out. In the record before us there is no proof of the breed of the dogs, and while there is proof that they had been trained for six months, there is no proof that they were trained in the tracking of human beings. It is questionable whether this is sufficient.

The first instruction requested by the defendant was given substantially in the general charge of the court and was, therefore, properly refused.

The second instruction was a request for a definition of the words "reasonable doubt," and was couched in the language approved by this court in the case of *Lovett v. State,* 30 Fla. 142, 11 South. Rep. 550, and also in *Bassett v. State,* 44 Fla. 12, 33 South. Rep. 262. The court did not in his charge give or attempt to give a definition in any form, nor was any instruction given embracing such a definition. We have held that the giving of the definition in any of the forms approved by this court will dispense with the necessity for giving the definition in another 'form, but that it is error, when no charge on the subject has been given, to refuse to give one of the definitions when so requested. Whatever views may be entertained by other courts as to the advisability of attempting a definition of

this phrase, the rule is well settled in this State. In *Reeves v. State,* 29 Fla. 527, 10 South. Rep. 901, the court below had charged that if the jury had any doubt as to the guilt of the defendant, they should give him the benefit of that doubt and acquit, yet this court held it was error to refuse an instruction as to what constitutes a reasonable doubt, and for this error alone reversed the case. *Oliver v. State,* 38 Fla. 46, 20 South. Rep. 803.

Charges numbered three, four, five and seven, in so far as they correctly state the law, were sufficiently covered by the general charge.

Charge number six was correctly refused, in that it is not supported by the evidence. It was not shown that any witness in this case had "knowingly, wilfully and intentionally testified falsely."

Charge number eight was given in the charge of the court in language more favorable to the defendant.

As the case must be reversed, it would be improper to discuss the only remaining assignment of error, the sufficiency of the evidence to support the verdict.

For refusing to charge as requested upon the definition of a reasonable doubt, the judgment is reversed and a new trial awarded.