BEN TOMLINSON v. STATE.

176 So. 543.
Division A.
Opinion Filed October 23, 1937.

*C. A. Avriett,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for the State.

BUFORD, J.—Plaintiff in error was convicted of the offense of breaking and entering a dwelling house of another in the night time with intent to commit a misdemeanor. To the judgment of conviction he prosecutes writ of error. He assigns one error, that the court erred in overruling defendant's motion for new trial. The motion for new trial contained three grounds, as follows:

"1.   The verdict is contrary to the evidence."

"2.   The verdict is contrary to the law."

"3.   The Court erred in denying motion of defendant

to strike from the consideration of the jury such evidence as was obtained by the State within the dwelling house of the defendant, which dwelling house was entered, searched, and a pair of shoes found therein and admitted in evidence. and the details of the action of the bloodhound therein trailing a pair of shoes therein without a search warrant, such evidence being so illegally obtained."

The record shows that the shoes referred to were found in the home of Bethel Tomlinson, who was the father of Ben Tomlinson, plaintiff in error. It shows that Ben Tomlinson had slept in the bed, beside which the shoes were found, a part of the night upon which the alleged breaking and entering occurred.

The record further shows by the testimony of Bethel Tomlinson himself, that when the officers arrived at his house and told him that they would like to go into "that room" he said "I told him to go right in; he was welcome; and Mr. Crackmore went around to the front and came into the front room where my boy stayed and when he went in he went to searching and he looked all around and turned the bed upside down and looked to his own satisfaction."

It, therefore, appears that the contention of the plaintiff in error that the search was unlawful is without merit. See Carlton v. State, 111 Fla. 777, 149 Sou. 767.

The State relied for a conviction upon the fact that the home of Mr. Helvenston in Live Oak, Florida, was broken into and entered in the night time by someone effecting entrance through a window; that Mr. Helvenston was aroused by an alarm given by his daughter; that the intruder left the house as Helvenston went to his daughter's room; that Helvenston could only identify the intruder as a negro boy; that the intruder took from the room of Helvenston's daughter a pocketbook containing about $5.00 and a little

loose change, besides stamps and other trinkets, all of the value of about $25.00; that it was necessary for the intruder to open the window through which he left the house to get into the house; that the alarm was then given and officers came to the Helvenston home. Upon learning what had occurred one of the officers immediately went to Lake City and procured a well trained and reliable bloodhound. They brought this dog to the scene of the crime. The dog immediately took the track which was plainly seen on the ground of a person wearing tennis shoes and followed that track to the shoes found under the defendant's bed, which were tennis shoes with markings on the bottom which fitted the markings in the track; that the shoes were placed in the tracks and fitted them exactly; that at a number of places between the place where the dog took the trail under Helvenston's window to the place where the shoes were found under the side of defendant's bed the officers were able to see the track and identify it as the same track which they followed from the scene of the crime.

The defendant freely admitted that the shoes were his shoes; that he had worn them on the night when the robbery was committed and that he came home after midnight. He claimed that he had been to a picture show and did not break into the Helvenston house.

In Whetston v. State, 31 Fla. 240, 12 S. 661, this Court held:

"Where footprints found at or near the scene of crime are not distinguished from those of the ordinary character by any peculiar marks, and the correspondence between them and the tracks of the accused is merely in superficial shape, outline and dimensions, it may serve to confirm a conclusion established by independent evidence but cannot be in itself safely relied on, on account of the general re-

semblance known to exist among feet and shoes of persons of the same age or size. But where certain peculiarities are observed which at once distinguish the impressions from all others, an exact correspondence, verified by the test of comparison, may have a decisive bearing."

In that case we also held:

"Circumstantial evidence may be relied upon to establish guilt, but the value of this kind of evidence consists in the conclusive nature and tendency of the circumstances relied upon; they must not only be consistent with guilt, but must be inconsistent with innocence. Such evidence is always insufficient where, assuming all to be proved which the evidence tends to prove, some other hypothesis may still be true. What circumstances will amount to proof can never be matter of general definition; the legal test is their sufficiency to satisfy the understanding and conscience of the jury to the exclusion of every reasonable doubt."

Not only was it shown by the evidence that the track of the intruder was a peculiar one but it was also shown that the shoes found by the defendant's bed exactly fit the tracks of the person who went in and out of Mr. Helvenston's window. It was also shown that the track was trailed continuously by a reliable and well-trained bloodhound from the scene of the crime to the place where the shoes were left by the defendant.

Evidence of the conduct of a dog in trailing accused from the scene of the crime to his dwelling or place where he was found or shown to have been after the commission of the act is competent and admissible, provided a proper preliminary foundation has been laid. See 16 C. J. 564. See also Hargrove v. State, 141 Ala. 97, 41 Sou. 972, 119 Am. St. Rep. 60; David v. State, 46 Fla. 137, 35 Sou. 76; Commonwealth v. Hoffman, 52 Pa. Sup. Ct. 272; State v.

Rasko, 239 Mo. 535; 144 S. W. 449; State v. Freeman, 146 N. C. 615, 616, 60 S. E. 986; Richardson v. State, 145 Ala. 46, 41 Sou. 82, 8 Ann. Cases 108; Harris v. State, 17 Ga. A 723, 88 S. E. 121.

The character and dependability of the dog used in this case was thoroughly established by the testimony of witnesses who had used the dog as a man-trailer for many months.

. The State relied upon circumstantial evidence, but the circumstances proven were so strong and cogent as to exclude every reasonable hypothesis except that of the defendant's guilt.

The judgment should be affirmed.

It is so ordered.

Affirmed.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, J. J., and BROWN, and CHAPMAN, J. J., concur in the opinion and judgment.