496 So.2d 121 (1986)
Juan F. RAMOS, Appellant,
v.
STATE of Florida, Appellee.
No. 63,444.
Supreme Court of Florida.
August 28, 1986.
Rehearing Denied November 14, 1986.
*122 James B. Gibson, Public Defender and Michael S. Becker, Asst. Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant.
Jim Smith, Atty. Gen. and Sean Daly, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
The appellant, Juan F. Ramos, appeals his conviction for first-degree murder and the imposition of the death penalty by the trial court after the jury recommended life imprisonment. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. Appellant raises twelve challenges to his conviction and sentence. In his first point, which we find to be dispositive, appellant alleges that the trial court erred in denying his motion to suppress evidence regarding two dog scent-discrimination lineups. For the reasons expressed, we agree and find that the state failed to establish a proper predicate for the admissibility of this type of lineup evidence and, therefore, we must vacate appellant's conviction and remand for a new trial.
The relevant facts are as follows. The victim, a young woman, was found dead in her bedroom at approximately 1:30 p.m. on April 23, 1982. She had been stabbed multiple times and had a butcher knife protruding from her chest. It was determined that most of the stab wounds were caused by a knife smaller than the one imbedded in the victim. The evidence indicated the victim had been strangled and sexually assaulted.
At the time of the homicide, appellant was employed by a firm located near the victim's home. He testified on his own behalf and denied involvement in the murder. Appellant stated that on the day of the murder he had gone to work before 7:00 a.m., found out that he had been laid off, and was back at his apartment at 7:10 a.m. He further testified that as he returned home from work he noticed a black man walking in the street near the victim's home.
The state's evidence against appellant included two dog scent-discrimination lineups. Prior to the lineups, appellant was interrogated for approximately seven hours in the courtroom of the Cocoa Police Department. On the following day this same room was used for the two lineups. The only people present at the lineups were the police chief, a police detective, a sergeant from the sheriff's office, and the dog-handler.
The first lineup consisted of five blue shirts, four of which belonged to the husband of the secretary to the police chief. The fifth shirt was the one the victim was wearing when she was killed. The victim's shirt was the only one that had been worn by a female and was the only shirt with blood on it. The dog was given appellant's scent from a cigarette pack that had been handled by appellant during the interrogation; then, beginning with shirt number one, the dog walked past each shirt. When the dog reached shirt number five, he put his head down and sniffed it. The dog was led away and, on a second pass by the shirts, immediately returned to shirt number five.
The second lineup consisted of five knives: three from a local diner, one from a police officer, and the one that had been imbedded in the victim's body. The knife found in the victim was the only knife with blood on it. This knife was placed in the number three position. The dog was again scented with the cigarette pack and was walked past the knives. He dropped his head when he got to knife number three. The handler led the dog away and, on a second pass, the dog stopped and licked knife number three.
The jury found appellant guilty as charged and recommended a sentence of life imprisonment. The trial judge overrode the jury recommendation and sentenced appellant to death.
The appellant contends that the trial court erred in denying his motion to suppress the testimony on the two scent-discrimination lineups, alleging that the state failed to establish the proper predicate with *123 regard to the reliability and accuracy of this type of lineup and that the lineup itself was conducted unfairly. We agree with both contentions.
This Court has previously addressed the admissibility of dog-tracking evidence, Tomlinson v. State, 129 Fla. 658, 176 So. 543 (1937); Davis v. State, 46 Fla. 137, 35 So. 76 (1903), and the United States Supreme Court has approved the use of dogs to detect drugs, Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). See also State v. Bankston, 435 So.2d 269 (Fla. 3d DCA 1983), cert. denied, 465 U.S. 1022, 104 S.Ct. 1273, 79 L.Ed.2d 698 (1984); Edwards v. State, 390 So.2d 1239 (Fla. 1st DCA 1980). In Tomlinson we approved the admissibility of dog-tracking evidence upon a finding that "[t]he character and dependability of the dog used ... was thoroughly established by the testimony of witnesses who had used the dog as a mantrailer for several months." 129 Fla. at 662, 176 So. at 545.
This decision is not intended to change that law. The use of a dog in a scent-discrimination lineup is not the same and is an issue of first impression in this Court. We believe it is important to recognize that using a dog to track a human or to detect the presence of drugs or explosives is distinctive from using a dog to directly identify a specific human from items in a lineup.
We find there must be a proper predicate to establish the reliability of dog scent-discrimination lineups before this type of evidence may be admitted at trial. Courts have properly been cautious to accept new methods of proof which have not been shown to be reliable. See, e.g., Bundy v. State, 471 So.2d 9 (Fla. 1985) (hypnotically refreshed testimony per se inadmissible); Walsh v. State, 418 So.2d 1000 (Fla. 1982) (polygraph examination evidence inadmissible); Zeigler v. State, 402 So.2d 365 (Fla. 1981) (results of sodium butathol test inadmissible), cert. denied, 455 U.S. 1035, 102 S.Ct. 1739, 72 L.Ed.2d 153 (1982). The only evidence presented regarding the reliability of the type of scent-discrimination lineup used in this case was the testimony of the dog handler and the police officer. We hold that this testimony, by itself, under the facts of this case, is insufficient to establish the reliability of dog scent-discrimination lineups as a method of proof.
We are equally concerned with the fairness of this lineup. The record reflects that the appellant had recently been interrogated for approximately seven hours in the room where the lineup was conducted; in the first lineup, the shirt identified was the only shirt in the lineup that had been worn by a female and the only one with blood on it; and, in the knife lineup, the knife identified was again the only knife in the lineup with blood on it. We also note that only the dog handler and the investigating officers observed the conduct of the lineup. We find that this record does not establish that this scent-discrimination lineup was conducted in a fair manner.
We do not rule out the use of dog scent-discrimination lineup evidence as a method of proof, but find that before it may be admitted it must be established that (1) this type of lineup evidence is reliable; (2) the specific lineup is conducted in a fair, objective manner; and (3) the dog used has been properly trained and found by experience to be reliable in this type of identification. In the instant case, the reliability of this type of lineup was not established, nor was the test conducted in a fair manner. We conclude, therefore, that the admission of this particular lineup evidence was prejudicial error. Accordingly, we reverse appellant's conviction and remand for a new trial.
It is so ordered.
McDONALD, C.J., and ADKINS, OVERTON, EHRLICH and SHAW, JJ., concur.
BOYD, J., dissents.