McDONALD *v.* STATE.

Opinion delivered November 1, 1920.

1. CRIMINAL LAW—TIME FOR OBJECTING TO TESTIMONY.—In a prose-
cution for burglary, where the State proved by a witness the
conduct of bloodhounds in trailing defendant, and it was brought
out on cross-examination of such witness that he did not know
whether the dogs possessed the necessary training nor whether
they were properly handled, a motion to exclude the testimony
as to the bloodhounds was made in time, and it should have been
excluded.

2.  Cʀɪᴍɪɴᴀʟ ʟᴀᴡ—ᴘʀᴇᴊᴜᴅɪᴄɪᴀʟ ᴇʀʀᴏʀ.—In a ·prosecution for burglary where testimony as to the conduct of bloodhounds was erroneously admitted, in the absence of proof that they were properly trained and handled, such testimony was prejudicial to defendant, though he was identified by the prosecuting witness, where such witness testified that he sent for the dogs because he wanted corroboration.           。

Appeal from Sebastian Circuit Court, Greenwood District; *George W. Dodd,* Special Judge; reversed.

*Holland & Holland,* for appellant.

It was error to refuse to exclude all testimony relative to the action of the dogs.    108 Am. St. Rep. 1027. No effort was made to show that these dogs were properly trained or handled or that they were even bloodhounds.    116 Ark. 232; 125 *Id.* 478.

*John D. Arbuckle,* Attorney General, and *Silas W. Rogers,* Assistant, for appellee.

Appellant did not object to the introduction of the testimony with reference to the trail of the bloodhounds and did not ask that such evidence be excluded.    The objection can not be raised here for the first time.    9 Enc. of Ev., p. 46; 125 Ark. 478; 8 Ala. App. 228; 62 So. Rep. 971.    See, also, 116 Ark. 262; 262 Ill. 411; 104 N. E. 804; 66 So. Rep. 973.    The evidence complained of was not prejudicial as it did not in any way point to appellant's guilt.

Sᴍɪᴛʜ, J.    Appellant was convicted of burglary, committed by breaking and entering a cotton-house, and has appealed.

The building entered belonged to one Jason Williams, who testified that he saw appellant in the cotton-house, and recognized him.    Williams gave certain testimony in regard to appellant having been trailed by bloodhounds, and the admission of this testimony is assigned as error.    Other exceptions were saved at the trial, but we think they do not require discussion.    It is insisted on behalf of the State that the testimony in regard to the hounds was competent, and that, if not com-

petent, it was not prejudicial; and further that apt objection was not made to its admission.

The first reference in the testimony to the dogs occurred in the direct examination of Williams by the prosecuting attorney. In response to the question, "What did you do after you got hold of Mr. Hall?" the witness answered: "I 'phoned Mr. Shaw, and he told me he would have to call Fort Smith for the dogs, and he 'phoned over there, and Ben Walker brought the hounds down, and turned the hounds loose where he threw the cotton sack down and left it, and the hounds taken up the trail there, and trailed him through the field the way this fellow ran back around to Mr. Smothers."

It will be observed that, in answer to a question which contained no direct reference to the dogs, the witness answered that the dogs had trailed appellant from the place where he threw his cotton sack down through the field through which he had seen appellant run to the home of Smothers, who was accused by the witness of complicity in the crime. During the continuance of the direct examination, a few other references were made by the witness to the trailing of appellant by the dogs. Upon the cross-examination of the witness, he was asked a number of questions about the manner in which the dogs trailed appellant, and was finally asked who had the dogs in charge, and, after stating that he did not know who had the dogs in charge, he admitted, in response to another question, that he was not himself experienced in handling bloodhounds. Counsel for appellant then moved to exclude the testimony in regard to the bloodhounds, which motion was overruled, and exceptions were saved. Thereafter counsel for appellant continued the cross-examination of the witness in regard to the conduct of the hounds, and asked this question: "Do you know whether the dogs were following the trail from there on correctly?" and the witness answered: "I have no way of knowing that. I am not a bloodhound." Counsel for appellant then renewed his motion to exclude the testimony, because it was not shown that the

dogs were properly trained, nor properly handled on that occasion.

We think it can not be said that appellant speculated on the testimony in regard to the conduct of the dogs, to see whether it would be favorable or unfavorable, because the testimony was offered by the State and was interwoven into the narrative of Williams in a way to become a part of it. It might have tended to the more expeditious and orderly dispatch of the trial for appellant to have first demanded that a showing be made that the dogs had been properly trained in man-trailing, and that they were properly handled on the occasion in question; but it does appear that objection was made to this testimony as soon as the lack of these essentials was developed in the examination of the witness.

There are courts which wholly exclude testimony in regard to the conduct of bloodhounds, as hearsay, and as unreliable; but in the case of *Holub* v. *State,* 116 Ark. 227, we held such testimony competent. But in the opinion in that case we cited cases defining the qualifications and conditions under which such testimony would be admitted at all, and we said the testimony in the case showed the dogs there in question possessed the necessary training.

In the instant case there was no attempt to qualify the dogs as experts; nor was there sufficient showing that they were properly handled, and the objection was made to the testimony as soon as the showing was made that these essentials were lacking.

It is argued on behalf of the State that, inasmuch as Williams positively identified appellant, the testimony was harmless in any event. But Williams himself testified that he wanted corroboration, and for that reason he sent for the dogs; and while the testimony of Williams, without the testimony about the dogs, is legally sufficient to sustain a verdict of guilty, we can not say that the jury would necessarily have convicted on the testimony of Williams without the corroborating testimony of the dogs. The argument is made that the con-

viction was not due to the testimony concerning the dogs, because it affirmatively appeared that the dogs were bewildered and had left the trail, and that the testimony was, therefore, more beneficial than harmful. That may or may not have been true; but as we can not know that such was its effect, we must reverse the judgment and remand the cause for a new trial, as the testimony was clearly incompetent, in the absence of a showing that the dogs were properly trained and handled.