### STATE v. C. E. ROBINSON.

#### (Filed 9 March, 1921.)

**1. Evidence—Bloodhounds—Criminal Law.**

In a criminal action, evidence that bloodhounds, that had been trained and were accustomed to pursue the human track and found by experience to be reliable therein, had been placed upon the defendant's tracks, and followed them under such circumstances as to afford substantial assurance, or permit a reasonable inference of the defendant's identification, is sufficient to be submitted to the jury with other evidence tending to show the guilt of the defendant of the offense charged.

**2. Same—Nonsuit—Trials.**

Where there is evidence that the defendant, charged with a secret assault with a gun, had been pursued by bloodhounds, followed by a crowd, to his home, with further evidence that he had a grudge against the one assaulted, the condition of defendant's gun indicating that it is the one that had been used; that he left the crowd and the dogs that they had followed in his yard where the dogs had identified him, without comment or protest, having first tried to account for the actions of the dogs, with the other evidence in this case: *Held,* sufficient, upon a motion as of nonsuit, to take the case to the jury.

**3. Evidence—Nonsuit—Appeal and Error.**

Where, in an action for a secret assault, the State's evidence is sufficient to take the case to the jury, upon a motion as of nonsuit, the defendant's contradictory evidence will not be considered.

**4. Appeal and Error—Instructions—Erroneous in Part.**

An ambiguous or incorrect portion of the charge to the jury will not be held for reversible error on appeal, when the charge, construed as a whole, and in its connected parts, correctly states the law controlling the case.

INDICTMENT for secret assault. Appeal by defendant from *Bond, J.,* at October Term, 1920, of PAMLICO. Defendant was convicted of an assault with a deadly weapon. Judgment on verdict, and defendant excepted and appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*C. L. Abernathy, H. A. Tolston, Jesse Davis, George Willis, F. C. Brinson, Z. V. Rawls, Ward & Ward for the defendant.*

HOKE, J. It is chiefly urged for error by appellant that the court refused to enter judgment of nonsuit, but on the record the objection cannot be sustained. Accepting the testimony tending to establish defendant's guilt as true, the established rule on motions of this character, it appears that on the evening of 14 November, 1918, at 7:30 p. m., the prosecutor, L. T. Daniels, was sitting at a table in a front room of his house when he was shot through the window by some person then unknown and unobserved, standing in front of the house, the charge being Nos. 6 and 8 birdshot, nineteen of the shot taking effect in his head; that next morning, about 6:30 a. m., two English bloodhounds were brought to the place by the owner, W. A. Harmon, and put on the apparent track of the person who did the shooting, and followed the trail down the intervening roads to defendant's house, one of the dogs whining up at the cart where defendant was then sitting just about to leave on some business, one witness saying that one of the dogs reared up on the cart and another that they followed same to the gate as defendant drove off, and being then stopped, and after defendant left the house the dogs went through the yard and up to a hog pen where it was shown defendant had been that morning; that defendant made no protest or comment on the presence of the crowd who had come to his house or to the action of the dogs, but after taking $1.50 paid him by one of the crowd, he drove off without further remark. It was shown that as the dogs pursued the trail they once or twice left the trail to go into a nearby yard, but always returned to it till they carried it to the yard of defendant as stated. There was evidence to the effect that the dogs were English bloodhounds who were trained and accustomed to follow the human track and had been found reliable in their work. That out in the yard or near it, and not far from the window at a point or in the direction where one must have stood to shoot into the house, the grass appeared to be trodden down, and near it were some gun shells, and just over the fence and in a line towards the window was a wad from a gun discharge. There was also evidence of the State tending to show that the year before defendant had paid plaintiff $500 to be relieved from a land trade in which they had entered, and when prosecutor afterwards sold the land for same price to others, defendant had made demand for a return of the $500, or part of it, and from time to time had persisted in this demand on plaintiff. It was shown further that the gun of defendant,

when examined on the morning the dogs went to the house, showed that one barrel had been recently fired, and that on Saturday before the shooting defendant had endeavored to procure the gun of a neighbor, but failed. It appeared, also, that the owner of the dogs, who had charge of them on the occasion, was not aware that defendant was in any way suspected, or of the existence of any grudge between them. Defendant, on the witness stand, testified and claimed that the effort to procure the gun of a neighbor was because he desired a gun of smaller barrel to hunt birds with; also that he had been hunting birds the Saturday before and had left two dead birds in his bag which had spoiled, causing an odor when he threw them out, the State contending that this was an effort to weaken the impression caused by the action of the dogs in his yard, and was a circumstance in support of its claim of guilt.

In *S. v. McIver,* 176 N. C., 718, it was stated as the correct summary of our decisions on the admission in evidence of the action of bloodhounds, that their action constitutes and is properly receivable in evidence when it is shown that they have been accustomed and trained to pursue the human track, have been found by experience reliable in such cases, and further that in the particular instance they were put on the trail of the guilty party and have pursued and followed it under such circumstances and in such a way as to afford substantial assurance or permit a reasonable inference of identification, citing, among other authorities, *S. v. Wiggins,* 171 N. C., 814; *S. v. Norman,* 153 N. C., 591; *S. v. Freeman,* 146 N. C., 615; *S. v. Moore,* 129 N. C., 501; *S. v. Dickinson,* 77 Ohio St., 34; and so stated, the position has been fully approved in the later case of *S. v. Yearwood,* 178 N. C., 813.

In the present instance these dogs and their action in the premises seem to meet every requirement embodied and approved in these and other cases on the subject, and supported as it is by the existence of a grudge between the parties, the condition of defendant's gun the morning after the shooting, and his unusual conduct in leaving his home the morning after with the dogs and crowd there in his yard, without comment or protest, and his evident effort to account for the action of the dogs in whining up at him in his wagon affords sufficient evidence of guilt and fully upholds the action of the court in submitting the issue to the jury. True, defendant, a witness in his own behalf, denies absolutely that he shot the prosecutor, and both he and his wife testify that he was at home on the occasion, some distance away, and there is some evidence *ultra* in support of their statement and claim, but this testimony coming from defendant may not be considered, and has no bearing on the legal proposition involved in defendant's motion to nonsuit, and which, as stated, must be decided on the State's testimony, and on the supposition that same is true.

Defendant excepts further to a portion of the charge in which his Honor said to the jury: "If the State, by the greater weight or pre-ponderance of the evidence, has shown to you the guilt of the defendant, you should find him guilty beyond a reasonable doubt." In reference to the trial of causes before the jury, this Court has repeatedly given approval to the position that "the charge of a trial judge must be con-sidered as a whole in the same connected way in which it was given, and upon the presumption that the jury did not overlook any portion of it. If when so construed it presents the law fairly and correctly, it will afford no ground for reversing the judgment, though some of the expres-sions, when standing alone, might be regarded as erroneous." *S. v. Exum,* 138 N. C., 599-602. While this excerpt, if it stood alone, might be objectionable, it does not stand alone. Immediately before and as a part of the same clause, the court had instructed the jury in definite terms that "The burden is on the State to show beyond a reasonable doubt the guilt of the defendant." And in twelve or fourteen other parts of the charge the court, in direct terms or by express recognition, in-structed the jury that "in order to a conviction the guilt of defendant must be established beyond a reasonable doubt." The excerpt objected to is in itself ambiguous, and if not a mistake of the stenographer is so clearly an inadvertence on the part of his Honor that the jury could not possibly have been misled as to the degree of proof required, and apply-ing the wholesome principle to which we have adverted, and considering the charge as a whole, we are well assured that the guilt of defendant has been established under correct principles of law, and on authority the exception should be disallowed. *S. v. Baldwin,* 178 N. C., 693.

The remaining exceptions are without merit, and on careful considera-tion of the entire record, we are of opinion that the trial is free from reversible error, and the judgment of the court should be affirmed.

No error.