3 Md. App. 340 (1968)
239 A.2d 128
JOEL TERRELL, JR.
v.
STATE OF MARYLAND.
No. 135, September Term, 1967.
Court of Special Appeals of Maryland.
Decided March 12, 1968.
The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.
Beverly S. Pearson for appellant.
Dickee M. Howard, Assistant Attorney General, with whom were Francis B. Burch, Attorney General, William A. Linthicum, Jr., State's Attorney for Montgomery County, and Page J. Digman, Assistant State's Attorney for Montgomery County, on the brief, for appellee.
THOMPSON, J., delivered the opinion of the Court.
Joel Terrell, Jr., the appellant, complains of a conviction of robbery in the Circuit Court for Montgomery County in a trial before Judge Walter H. Moorman and a jury. His specific complaints are that evidence concerning tracking of the defendant by a German Shepherd dog was admitted into evidence over objection, that certain articles allegedly seized as a result of *342 an illegal search and seizure were admitted into evidence over objection and that the determination of the lawfulness of the arrest and of the ensuing search and seizure should have been made out of the presence of the jury.
On September 20, 1966, at approximately 10:15 P.M. three Negro males, two of whom displayed revolvers, held up the desk clerk at the Park Silver Motel on Thirteenth Street in Silver Spring, Maryland and seized a cash box containing one hundred dollars ($100.00) belonging to the motel and eighteen dollars ($18.00) belonging to the clerk. Police, who arrived within two or three minutes, brought to the motel eight to ten suspects found in the area for identification by the clerk. He declared them not to be the robbers. The trial judge sustained an objection to the question as to what description of the suspects was given to the police.[1] Later, however, the clerk testified "Well, they had beards. One of them, the defendant on the left, had on a white windbreaker of some sort. The fellow on your left had on a hat, beard, and he had a turtle neck sweater of some dark color with a coat over a suit coat like what he has on now." Although he admitted he made some mistakes in giving the description to the police, presumably some similar description was given at the time he reported the robbery or soon thereafter. Inspector Howes of the Montgomery County Police Department was the first officer who responded to the clerk's call. He testified that upon his arrival he observed a trail of coins leading from the front of the motel to a nearby alley. He stayed at the entrance to the alley to protect the scene until Fred Helton, an officer of the K-9 Corps with his dog, "Rocky," a German Shepherd K-9 dog, arrived at the scene. Officer Helton started the dog on a track at the entrance to the alley. The dog led the officer up the alley and turned right into another alley leading out of Eastern Avenue. Officer Helton took the dog across the street to a church lawn. The dog continued the trail south on the sidewalk to a Plymouth automobile which was parked on Eastern Avenue. There was a light *343 rain falling and causing a mist on the car windows so that the officer could not readily see inside the car; but, however, he did see one subject lying on the front seat and one subject lying on the back seat. Three people were in the automobile; one of whom was Joel Terrell, Jr., the appellant. Officer Helton then radioed for assistance. One subject in the car opened the car door and the officer told him to stay inside. Assistance arrived within minutes and the three suspects were ordered out of the car and placed in separate police vehicles; within a few minutes the motel clerk was brought to the scene and identified the three persons as the ones who had robbed him. It was now approximately 11:00 P.M.
One of the occupants of the car, Kaiser Booker, admitted that he had been involved in the hold-up and during pre-trial questioning, he told the police that the defendants had been with him, but at the trial he denied the defendants had been with him and named a different person and another whose name he could not remember as his accomplices.
Cpl. Daly, of the Montgomery County Police Department, testified that after the subjects got out of the Plymouth automobile, he looked in the open door and observed a ten dollar bill protruding from the driver's seat. In the rear of the automobile, he observed folded United States currency protruding from underneath the rear seat. On the floor he observed the butt of a pistol protruding from beneath some newspapers. Upon moving the newspapers he saw two pistols. The Plymouth was immediately towed to the Silver Spring Police Station, which was about half to three-quarters of a mile away. It was thoroughly searched at the station and $100.13 in United States money and the two pistols were seized; all of which were admitted into evidence at the trial. In addition, pictures of the interior of the car were taken and admitted into evidence. Some of the pictures were taken on the street at the place where the vehicle was found, others were taken at the police station soon after the car was taken there.
Terence P. Cahill was qualified as an expert in the training of dogs for use by law enforcement agencies. He testified that over a period of five years in London he had trained approximately 150 dogs and supervised the training of others; *344 that he trained twenty-five dogs in one year's service in Baltimore; started the K-9 Corps in the District of Columbia, where he's trained at least eighty dogs. In addition, he has lectured on the subject since 1959 and has trained men to become dog trainers for other jurisdictions. He testified that he trained this particular German Shepherd dog and Officer Helton daily for a period of fifteen weeks and once a week for many weeks thereafter; he further testified that the dog was reliable in the tracking of human beings and had been given an excellent rating in his fifteen week training course. Officer Helton also testified that the dog had been trained in tracking and had shown ability to follow a trail.

I
The first question presented is whether or not the evidence of tracking by the German Shepherd police dog was properly admitted into evidence.
The ability of a dog to follow the human scent is not an inherent characteristic, but one that must be instilled into the animal through arduous training. A very colorful page of American folklore deals with the bloodhound tracking down a fugitive. It was not until 1893, Hodge v. State, 98 Ala. 10, 13 So. 385, 39 Am. St. Rep. 17, that an accused raised the issue that evidence showing that a bloodhound tracked him down was not admissible. The Supreme Court of Alabama in a one page opinion allowed the evidence, citing no authority, stating that it was "common knowledge" that such dogs, if properly trained, could track down a person. Four years later, the Alabama Supreme Court reiterated its position, Simpson v. State, 111 Ala. 6, 20 So. 572 (1896) citing Hodge, supra, as precedent. Nonetheless, the formulation of a general rule with restrictions was in the making.
The Kentucky Supreme Court set forth the basic rule in 1898 when it handed down Pedigo v. Commonwealth, 103 Ky. 41, 44 S.W. 143, 19 Ky. L. Rep. 1723, 82 Am. St. Rep. 566, 42 L.R.A. 432, at 44 S.W. at 145:
"After a careful consideration of this case by the whole court, we think it may be safely laid down that, in order to make such testimony competent, even when *345 it is shown that the dog is of pure blood, and of a stock characterized by acuteness of scent and power of discrimination, it must also be established that the dog in question is possessed of these qualities, and has been trained or tested in their exercise in the tracking of human beings, and that these facts must appear from the testimony of some person who has personal knowledge thereof. We think it must also appear that the dog so trained and tested was laid on the trail, whether visible or not, concerning which testimony has been admitted, at a point where the circumstances tend clearly to show that the guilty party had been, or upon a track which such circumstances indicated to have been made by him. When so indicated, testimony as to trailing by a bloodhound may be permitted to go to the jury for what it is worth, as one of the circumstances which may tend to connect the defendant with the crime of which he is accused. When not so indicated, the trial court should exclude the entire testimony in that regard from the jury."
Besides stating the majority rule, Pedigo, supra, set the groundwork for the minority by referring to the superstitious attitude towards the bloodhound. In 1903, the Nebraska Supreme Court in Brott v. State, 70 Neb. 395, 97 N.W. 593, 63 L.R.A. 789 reversed a burglary conviction based on "bloodhound evidence." The evidence so adduced was not competent for, "It is unsafe evidence, and both reason and instinct condemn it." A close examination of the facts in Brott shows that there had been a time lapse before the dogs were used, during which time the trail had been walked on "a hundred times" by observers. Therefore, even under Pedigo, supra, the evidence would be excluded.
The minority rule established by Brott, supra, which like Hodge, supra, cited no authority except its own version of "common knowledge", set out two reasons why the evidence should be excluded. The superstitious awe in which the bloodhound is held may exert an undo effect on the jury which cannot know first hand and "whether the reasons on which he acted *346 were good or bad." Furthermore, because the dog is not infallible, a wrong man may be tracked.
Although there was a rapid evolvement of the minority rule with Brott, supra, as its focal point  support for the rule was slow. Several jurisdictions were placed in the minority camp merely because they excluded such evidence under circumstances that courts following the majority rule would also have excluded it. For a complete discussion see State v. Dickerson, 77 Ohio St. 34, 82 N.E. 969, 13 L.R.A. (N.S.) 341, 347, 122 Am. St. R. 479, 11 Ann. Cas. 1181 (1907). The reasoning behind the minority rule was rather shallow; it did not go beyond the negative pronunciation and interpretation of Brott, supra. We will discuss the minority's reasons in more detail hereinafter.
Today, twenty-five jurisdictions in the United States have decided cases involving tracking by dogs.[2] Nineteen have followed *347 the majority thinking while six[3] may be classified as minority orientated.
*348 Under Pedigo, supra, and the ensuing decisions, various restrictions were established, limiting the unrestricted, vague enunciation *349 of Hodge, supra. First a proper foundation must be laid.[4] Before any evidence pertaining to the results of the dog's tracking is admitted, the handler of the dog must testify as to his own qualifications[5] and experience and that of the dog, along with an account of the dog's ability to track. The cases[6] have *350 talked in terms of the dog's experience,[7] reliability,[8] reputation,[9] skill[10] and training.[11] Next, the circumstances pertaining *351 to the trailing itself must be shown. For example, was the trail fresh[12] or had it been trampled,[13] or was there interference with the dogs while they were tracking,[14] or were the dogs placed on the trail soon enough.[15] According to Pedigo, supra, the dogs must be placed on the trail at such a point where it is known that the perpetrator of the crime had been.[16] The Kentucky *352 Supreme Court in Pedigo, supra, made it clear that any evidence derived from the use of the dogs will be "one of the circumstances which may tend to connect the defendant with the crime * * *."[17] Furthermore, the actions of the dogs must be certain, especially in indicating whom they were trailing.[18] Many courts following Pedigo, supra, seemed to feel that the dog's pedigree must be shown.[19]Ruling Case Law in 1915 said pedigree was a proper requisite.[20]Bullock v. Commonwealth, 249 Ky. 1, 60 S.W.2d 108, 94 A.L.R. 407, 420-21 stressed this point. The most recent cases have not stressed pedigree as a prerequisite for the admission of evidence.[21] The Supreme *353 Court of North Carolina stated in State v. Rowland, 263 N.C. 353, 139 S.E.2d 661 at 665:
"We find no North Carolina cases, and defendant has cited none to us, in which bloodhound evidence has been excluded for a deficiency in the proof of the bloodhound's pedigree if he is shown to be naturally capable of following the human scent, i.e. that he is a bloodhound, and if the evidence is corroborative of other evidence tending to show defendant's guilt." (Emphasis added).
Pedigo, supra, stated that "such testimony [is] competent, even when it is shown that the dog is of pure blood * * *." The words "even when it is shown" are permissive not mandatory. It would seem by this that a showing of pedigree does not preclude exhibiting the further facts necessary in laying a proper foundation. This court does not believe that a showing of a certificate of pedigree would enhance the evidence adduced by the actions of the dog in question. Particularly apropos to this case is the statement of the Supreme Court of North Carolina in the case of State v. Rowland, 263 N.C. 353, 139 S.E. 661 at 666: "By his performance the old dog in this case pedigreed himself, at least. This record leaves little doubt that the shoe prints which he had followed from Maggie's to Earline's belonged to the defendant."
Once the proper foundation has been laid the evidence may be used to identify[22] the accused as the perpetrator or for some other reason,[23] as long as this evidence is corroborated.[24]
*354 Only five states[25] have followed Nebraska in adopting the minority view which seems to be primarily centered around the effect the bloodhound evidence will have on the jury.[26] The minority cases have stressed six objections to the use of such evidence.[27]
The first is that "[n]either the court nor the jury can have any means of knowing why the dog does this thing or another * * *." People v. Pfanschmidt, 262 Ill. 411, 104 N.E. 823, 1915A Ann. Cas. 1171 (1914). This is a reference to the training and ability of the dog. The majority has answered this criticism by requiring a proper foundation laid first so the jury and court understand that the dog does in fact perform accurately and his method is of no real importance.
Secondly, that superstition and the legendary history of the bloodhound,[28] local prejudice[29] and public indignation and excitement[30] may exert undue influence on the jury.
The minority feels that because of the colorful history of the bloodhound, the mere use of the dogs will arouse the public's excitement with the result of prejudicing the defendant. A change in venue or venire may correct this; furthermore, the elements *355 of unfavorable publicity, public excitement and the alike are not limited to bloodhound cases. The laying of a proper foundation and the use of the evidence as cumulative and for corroboration lessen the impact of the introduction of the dog's evidence. The minority's criticism, here, is lodged against the initial feelings the jury will have towards the case, not against the result the jury will reach. Their criticism is one against the jury system using the use of bloodhound evidence as an example.[31]
A third criticism is "that the life and liberty of a free citizen ought not to be put in jeopardy on the testimony of dogs", 94 A.L.R. 413, 416, 418 (1935). This idea was stressed in State v. Storm, 125 Mont. 346, 238 P.2d 1161 (1952). However, it is not the dog but the handler who reports on the dog's behavior, training, and ability. This leads to three other minority views, i.e., the dog cannot be cross-examined, his trainer's testimony is hearsay and the accused is not confronted by his accusor, the dog.
Who is the proper person to question? The minority states that it is the dog while the majority states that it is the trainer. As stated in the first argument, the dog's actions are predictable if he has been properly trained and the trail has been adequately followed. The trainer should be questioned to see if the dog was properly trained and the trail followed correctly  for if this has been done, the dog's thoughts, mannerism and such need not be looked into and if this foundation is not laid, then the evidence is excluded.[32] It is the trainer who controls the dog, therefore, he should be the one to be examined and cross-examined.[33] *356 Therefore, "the accused does have an opportunity to confront and cross-examine these witnesses who give evidence." 33 Yale L. Rev. 216 (1923). The trainer stays with the dogs so he testifies as to his own observations. This would not be hearsay as proposed in Rex v. White, [1926] 3 D.L.R. 1, 37 B.C. 43, 2 W.W.R. 481, 45 Can. Crim. Cas. Ann. 328, 94 A.L.R. 413, 416-17 (1935) overruled by Regina v. Haas, [1962] 35 D.L.R.2d 172. An early view that such evidence was hearsay, was expressed by Elliott, 2 Elliott, Evidence § 1253 (1904), citing Brott, supra. The Montana Supreme Court in State v. Storm, supra held that such evidence was a conclusion and therefore hearsay. It should be noted that in many trials, human evidence of the performance of a machine such as radar or a breathilizer are admitted.
"It is the human testimony that makes the trailing done by the animal competent; and its actions are described by human testimony as it would describe the operations of a piece of intricate machinery." State v. Dickerson, 77 Ohio St. 34, 82 N.E. 969, 122 Am. St. R. 479, 11 Ann. Cas. 1181, 13 L.R.A. (N.S.) 341, 349 (1907)
A further criticism brought out in Pedigo, supra and 9 Wash. & Lee L. Rev. 248, 253 (1952) is that the wrong man may be convicted. This might be a good argument if this evidence alone would convict.[34] Even eye-witness identification is sometimes wrong, yet it is universally admitted.
*357 In 1914, Illinois joined Nebraska as a minority state, People v. Pfanschmidt, supra. A close look at Pfanschmidt,[35]supra, will show that like Brott, supra, the trail had been obscured so much that it could not be followed; the evidence would have been excluded under Pedigo, supra. People v. Wolf, 334 Ill. 218, 165 N.E. 619 (1929) followed Pfanschmidt, supra. In 1917, Ruse v. State, 186 Ind. 237, 115 N.E. 778, 1917E L.R.A. 726 (1917) was decided[36] following Pfanschmidt, supra. Ruse, supra, makes it clear that such evidence would never be admitted. Iowa joined the minority in 1923, State v. Grba, 196 Iowa 241, 194 N.W. 250 (1923).[37] The evidence, here, of the dog following a second trail would probably have been excluded under Pedigo, supra.
The latest state to be classified in the minority is Montana, State v. Storm, supra. The dogs in this case were taken off the trail. Because of the diversion as described in that case, the evidence would be excluded under Pedigo, supra, see 9 Wash. & Lee L. Rev. 248, 254 (1952). It appears that the court was also concerned because of a lack of corroborative evidence.
There is one other minority jurisdiction, New York  People v. Whitlock, 183 App. Div. 482, 36 N.Y. Crim. 524, 171 N.Y.S. 109 (1918). In that case a proper foundation was not laid; thereby the evidence was excluded. The trail, here, had also been obscured. This is one of three American cases dealing with German Shepherd dogs rather than bloodhounds.[38] In 1964, Illinois again following Pfanschmidt, supra, excluded German Shepherd evidence, People v. Griffin, 48 Ill. App.2d 148, 198 N.E. 115 (1964) but the tracking was insufficient under any recognized test. The latest German Shepherd case is Commonwealth v. LePage, 226 N.E.2d 200 (Mass. 1967) which held at 226 N.E.2d 210:

*358 "There is no error in admitting the evidence of the trailing of the intruders by trained dogs. See Commonwealth v. Smith, 342 Mass. 180, 182, 172 N.E.2d 597 (bloodhounds search without result). Decisions in other states frequently have treated such evidence as admissible at least as corroborative of other testimony. See Wigmore, Evidence (3d ed.) § 177. The capacity of trained dogs to follow a human's trail has long been known. [citations omitted] Although such evidence should be limited to matters as to which it is likely to be reliable, it may be admitted in the exercise of a sound judicial discretion."
In the case at bar, the qualifications and experience of the dog were shown. The scene was protected until the dog arrived. The dog was placed on the trail where it seemed apparent that the perpetrators of the crime had been. There was no interruption in the tracking. The dog went to the car where the appellant was hiding along with two other men. The appellant was identified by the victim. All the dog did was locate three men and the appellant was identified as one of the perpetrators. The lower court did not err in admitting evidence of tracking.

II
Terrell complains that the arrest made by Officer Fred Helton when he confined the suspects to the automobile pending arrival of re-inforcements, was made without probable cause. It seems probable that at the time the officer had been furnished with the description of the robbers as given by the victim, but that the trial court's erroneous ruling precluding the admission of the detailed description given to the police by the victim (see footnote no. 1 supra) prevented the State from fully developing the record in this regard. If the officer looking through the car window noted that the suspects generally met this description then, of course, there would be no question that there was probable cause for the arrest since they were found a few blocks from the robbery and not too many minutes thereafter. Regardless of this, however, the information furnished by the tracking of the dog was admissible and when combined with the *359 other circumstances i.e. the time and place of the arrest the officer had probable cause to make the arrest. It should be noted, of course, an officer is not required to have sufficient evidence to convict at the time he makes his arrest but only probable cause, which has been described as something more than suspicion, but less than that required for conviction; Edwardsen v. State, 243 Md. 131, 220 A.2d 547.
Although the appellant points out that the windows of the car were misty one man opened the door and the officer was thus given a good view of him.
Terrell contends most strenuously that under Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 the fact that the motor vehicle was towed to the police station prior to the completion of the search and seizure, made this act unreasonable even though the arrests were legal. In an opinion very recently filed we had occasion to review this problem in detail. In the case of Anthony, Smith and Thornton v. State of Maryland, 3 Md. App. 129, 238 A.2d 130 we said:
"And while ordinarily a search of a motor vehicle can be incident to an arrest only if it is substantially contemporaneous therewith and is confined to the immediate vicinity of the arrest, Preston v. United States, 376 U.S. 364, Wilson v. State, 2 Md. App. 210, in some circumstances a search may be deemed incident to an arrest, although not conducted at the scene of the arrest, when it is made with reasonable promptness at a police station to which the vehicle was towed immediately following the arrest. Thus, in Arwine v. Bannan, 346 F.2d 458 (6th Cir.), it was held at page 470-471 that the arrest and warrantless search of the defendant's car at a police garage more than three hours after his arrest was nevertheless incident to his arrest since the arrest and search were `units of an integrated incident.' In Price v. United States, 348 F.2d 68 (D.C. Cir.), the search of the defendant's car was made after it had been impounded in the police parking lot following his arrest and transportation *360 to the police station. The court, in upholding the search, said at page 70 that it was `part of a continuing series of events which included the original arrest and continued uninterruptedly as lawful police investigation and action.' In Trotter v. Stephens, 241 F. Supp. 33 (E.D. Ark.), the search of the defendant's automobile outside of the jail to which he had been taken following his arrest was held valid, though made several hours after his arrival, the court there ruling at page 41 that the car had been obtained incident to and contemporaneous with defendant's arrest, and that the subsequent search thereof was "merely part of one continuous act." In United States v. Theriault, 268 F. Supp. 314 (W.D. Ark.), the search of the defendant's truck outside the police station to which he had been taken after his arrest was upheld, the court there ruling at page 324 that it was part of `an uninterrupted and continuing action of the police initiated by the lawful arrest of the defendant.' To like effect, see Rodgers v. United States, 362 F.2d 358 (8th Cir.); Crawford v. Bannan, 336 F.2d 505 (6th Cir.); People v. Webb, 424 P.2d 342 (Calif.); People v. Robinson, 402 P.2d 834 (Calif.); State v. Wilson, 424 P.2d 650 (Wash.); State v. McCreary, 142 N.W.2d 240 (S.D.); State v. Wood, 416 P.2d 729 (Kan.); State v. Putnam, 133 N.W.2d 605 (Neb.). It is true, of course, that the rule authorizing a warrantless search of a motor vehicle incident to a lawful arrest is usually justified on the basis of the need of the police to seize weapons and other things which might be used to assault an officer or effect an escape, as well as the need to prevent the destruction of evidence of the crime  considerations of no real applicability where, as here, the suspects and their vehicle were safely in police custody at the time of the search. But as we observed in St. Clair v. State, 1 Md. App. 605, 612, and more recently in Lewis v. State, 2 Md. App. 678, these basic reasons justifying *361 a warrantless search incident to a valid arrest are not exclusive, nor do they operate to override the ultimate test governing the validity of a search and seizure without a warrant, viz., whether under the facts and circumstances present in each case, the search was reasonable under the Fourth Amendment."
It will be noted that on the facts of this case, the search was begun at the scene, but it was only a matter of minutes before the victim appeared and identified the robbers, and only a few more minutes before the robbers and the car were taken to a nearby police station where it could be more conveniently searched. There was no break in the chain of events and we think there was one integrated search within the meaning of Anthony v. State, supra and that the search was therefore incident to the arrest. It would not be reasonable under these circumstances to hold that the officers were constitutionally required to complete the search in the darkness and rain when it could be done with illumination and under cover less than a mile away from the scene of the arrest.

III
Finally Terrell argues that under Farrow v. State, 233 Md. 526, 197 A.2d 434, the trial judge was required to conduct a hearing as to the legality of the arrest out of the presence of the jury. While that case indicated quite clearly that this would be the better practice, it did not make it mandatory, particularly where it was later determined that the evidence should be admitted. In Smith v. State, 189 Md. 596, 56 A.2d 818 the Court of Appeals held that although better practice required a trial judge to conduct a hearing concerning the voluntariness of a confession outside of the presence of the jury, there was no error where it was later determined that the confession was voluntary and should be admitted into evidence. Recently the Supreme Court of the United States approved the same ruling in the case of Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed. 31. We hold that while it would have been better practice for the trial judge to have made a preliminary determination as to the validity of the arrest as is indicated in Farrow *362 v. State, supra, that inasmuch as it was determined that the evidence should be admitted, there was no error.[39]
Judgment affirmed.
NOTES
[1] We do not know why the trial judge sustained the objection; compare Farrow v. State, 233 Md. 526, 197 A.2d 434 and Graham v. State, 239 Md. 521, 212 A.2d 287.
[2] Alabama  Hodge v. State, 98 Ala. 10, 13 So. 385, 39 Am. St. R. 17 (1893); Simpson v. State, 111 Ala. 6, 20 So. 572 (1896); Little v. State, 145 Ala. 662, 39 So. 674 (1905); Richardson v. State, 145 Ala. 46, 41 So. 82, 8 Ann. Cas. 108 (1906); Hargrove v. State, 147 Ala. 97, 41 So. 972, 119 Am. St. R. 60, 10 Ann. Cas. 1126 (1906); McDonald v. State, 165 Ala. 85, 51 So. 629 (1909); Gallant v. State, 167 Ala. 60, 65, 52 So. 739, 741 (1910); Allen v. State, 8 Ala. App. 228, 62 So. 971, 1917E L.R.A. 730 (1913); Loper v. State, 205 Ala. 216, 87 So. 92 (1920); Moore v. State, 26 Ala. App. 607, 164 So. 761 (1935); Orr v. State, 236 Ala. 462, 183 So. 445 (1938); Burks v. State, 240 Ala. 587, 200 So. 418 (1941); Aaron v. State, 271 Ala. 70, 122 So.2d 360 (1960)

Arkansas  Holub v. State, 116 Ark. 227, 172 S.W. 878 (1916); Padgett v. State, 125 Ark. 471, 188 S.W. 1158 (1916); Cranford v. State, 130 Ark. 101, 197 S.W. 19 (1917); McDonald v. State, 145 Ark. 581, 224 S.W. 976 (1920); Adams v. State, 149 Ark. 669, 235 S.W. 372 (1921); West v. State, 150 Ark. 555, 234 S.W. 997 (1921); Fox v. State, 156 Ark. 428, 246 S.W. 863 (1923); Doyle v. State, 166 Ark. 505, 266 S.W. 459 (1924); Rolen v. State, 191 Ark. 1120, 89 S.W.2d 614 (1936)
Florida  Davis v. State, 46 Fla. 137, 35 So. 76 (1903); Davis v. State, 47 Fla. 26, 36 So. 170 (1904); Tomlinson v. State, 129 Fla. 658, 176 So. 543 (1937)
Georgia  Fite v. State, 16 Ga. App. 22, 84 S.E. 485 (1915); Aiken v. State, 16 Ga. App. 848, 86 S.E. 1076 (1915); Harris v. State, 17 Ga. App. 723, 88 S.E. 121 (1916); Troup v. State, 26 Ga. App. 623, 107 S.E. 75 (1921); Schell v. State, 72 Ga. App. 804, 35 S.E.2d 325 (1945); Mitchell v. State, 202 Ga. 247, 42 S.E.2d 767 (1947)
Kansas  State v. Adams, 85 Kan. 435, 116 P. 608, 35 L.R.A. (N.S.) 870 (1911); State v. Mooney, 93 Kan. 353, 144 P. 228 (1914); State v. Sweet, 101 Kan. 746, 168 P. 1112 (1917); State v. Schalansky, 112 Kan. 87, 209 P. 816 (1922); State v. Evans, 115 Kan. 538, 224 P. 492; State v. Fixley, 118 Kan. 1, 233 P. 796 (1925); State v. Netherton, 133 Kan. 685, 3 P.2d 495 (1931)
Kentucky  Pedigo v. Commonwealth, 103 Ky. 41, 44 S.W. 143, 19 Ky. L. Rep. 1723, 82 Am. St. R. 566, 42 L.R.A. 432 (1898); Allen v. Commonwealth, 26 Ky. L. Rptr. 807, 82 S.W. 589 (1904); Denham v. Commonwealth, 119 Ky. 508, 84 S.W. 538 (1905); Sprouse v. Commonwealth, 132 Ky. 269, 116 S.W. 344 (1909); Blair v. Commonwealth, 171 Ky. 319, 188 S.W. 390 (1916); Blair v. Commonwealth, 181 Ky. 218, 204 S.W. 67 (1918); Meyers v. Commonwealth, 194 Ky. 523, 240 S.W. 71 (1922); Springs v. Commonwealth, 198 Ky. 258, 248 S.W. 535 (1923); Hays v. Commonwealth, 211 Ky. 716, 277 S.W. 1004 (1925); Stidham v. Commonwealth, 221 Ky. 49, 297 S.W. 929 (1927); Keaton v. Commonwealth, 223 Ky. 645, 4 S.W.2d 675 (1928); Alsept v. Commonwealth, 240 Ky. 395, 42 S.W.2d 517 (1931); Bullock v. Commonwealth, 241 Ky. 799, 45 S.W.2d 449 (1932); Bullock v. Commonwealth, 249 Ky. 1, 60 S.W.2d 108, 94 A.L.R. 407 (1933); Short v. Commonwealth, 251 Ky. 819, 66 S.W.2d 33 (1933); Kelly v. Commonwealth, 259 Ky. 770, 83 S.W.2d 489 (1935); Crabtree v. Commonwealth, 260 Ky. 575, 86 S.W.2d 301 (1935); Brummett v. Commonwealth, 263 Ky. 460, 92 S.W.2d 787 (1936); Daugherty v. Commonwealth, 293 Ky. 147, 168 S.W.2d 564 (1943)
Louisiana  State v. King, 144 La. 430, 80 So. 615 (1919); State v. Harrison, 149 La. 83, 88 So. 696 (1921); State v. Davis, 149 La. 1009, 90 So. 385 (1921); State v. Davis, 154 La. 295, 97 So. 449 (1923); State v. Greene, 210 La. 157, 26 So.2d 487 (1946)
Massachusetts  Commonwealth v. Smith, 342 Mass. 180, 182, 172 N.E.2d 597 (1961); Commonwealth v. LePage, 226 N.E.2d 200 (Mass. 1967)
Minnesota  Crosby v. Moriarty, 148 Minn. 201, 181 N.W. 199 (1921)
Mississippi  Spears v. State, 92 Miss. 613, 46 So. 166, 16 L.R.A. (N.S.) 285 (1908); Carter v. State, 106 Miss. 507, 64 So. 215 (1914); Scott v. State, 108 Miss. 464, 66 So. 973 (1915); Harris v. State, 143 Miss. 102, 108 So. 446 (1926); Boatwright v. State, 143 Miss. 676, 109 So. 710 (1926); Fisher v. State, 150 Miss. 206, 116 So. 746 (1928); Hinton v. State, 175 Miss. 308, 166 So. 762 (1936)
Missouri  State v. Rasco, 239 Mo. 535, 144 S.W. 449 (1912); State v. White, 195 S.W. 994 (Mo. 1917); State v. Deems, 280 Mo. 84, 217 S.W. 43 (1919); State v. Barnes, 289 S.W. 562 (Mo. 1926); State v. Steely, 327 Mo. 16, 33 S.W.2d 938 (1930); State v. Freyer, 330 Mo. 62, 48 S.W.2d 894 (1932); State v. Shawley, 334 Mo. 352, 67 S.W.2d 74, 86 (1933); State v. Long, 336 Mo. 630, 80 S.W.2d 154 (1935)
North Carolina  State v. Moore, 129 N.C. 494, 39 S.E. 626, 55 L.R.A. 96 (1901); State v. Hunter, 143 N.C. 607, 56 S.E. 547, 118 Am. St. R. 830 (1907); State v. Freeman, 146 N.C. 615, 60 S.E. 986 (1908); State v. Spivey, 151 N.C. 676, 65 S.E. 995 (1909); State v. Norman, 153 N.C. 591, 68 S.E. 917 (1910); State v. Wiggins, 171 N.C. 813, 89 S.E. 58 (1916); State v. McIver, 176 N.C. 718, 96 S.E. 902 (1918); State v. Yearwood, 178 N.C. 813, 101 S.E. 513 (1919); State v. Palmer, 178 N.C. 822, 101 S.E. 506 (1919); State v. Robinson, 181 N.C. 516, 106 S.E. 155 (1921); State v. McLeod, 196 N.C. 542, 146 S.E. 409 (1929); State v. McLeod, 198 N.C. 649, 152 S.E. 895 (1930); State v. Lee, 211 N.C. 326, 190 S.E. 234 (1939); State v. Dorsett, 245 N.C. 47, 95 S.E.2d 90 (1956); State v. Rowland, 263 N.C. 353, 139 S.E.2d 661 (1965)
Ohio  State v. Dickerson, 77 Ohio St. 34, 82 N.E. 969, 122 Am. St. R. 479, 11 Ann. Cas. 1181, 13 L.R.A. (N.S.) 341 (1907); State v. Hall, 3 Ohio N.P. 125, 4 Ohio Super. & C.P. 147; Baum v. State, 27 Ohio C.C.R. 569; State v. Brooks, 1 Ohio Dec. Reprint 407, 9 West. L.J. 109
Oklahoma  Buck v. State, 77 Okla. Crim. 17, 138 P.2d 115 (1943)
Pennsylvania  Commonwealth v. Hoffman, 52 Pa. Super. 272 (1912)
South Carolina  State v. Brown, 103 S.C. 437, 88 S.E. 21, 1916D L.R.A. 1295 (1916)
Tennessee  Copley v. State, 153 Tenn. 189, 281 S.W. 460, 462 (1926)
Texas  Parker v. State, 46 Tex. Crim. 461, 80 S.W. 1008, 108 Am. St. R. 1021, 3 Ann. Cas. 893 (1904)
West Virginia  State v. McKinney, 88 W. Va. 400, 106 S.E. 894 (1921)
[3] Illinois  People v. Pfanschmidt, 262 Ill. 411, 104 N.E. 804, 1915A Ann. Cas. 1171 (1914); People v. Wolf, 334 Ill. 218, 165 N.E. 619 (1929); People v. Griffin, 48 Ill. App.2d 148, 198 N.E.2d 115 (1964)

Indiana  Stout v. State, 174 Ind. 395, 92 N.E. 161, 1912D Ann. Cas. 37 (1910); Ruse v. State, 186 Ind. 237, 115 N.E. 778 L.R.A. 1917E 726 (1917)
Iowa  McClurg v. Brenton, 123 Iowa 368, 98 N.W. 881 (1904); State v. Grba, 196 Iowa 241, 194 N.W. 250 (1923)
Montana  State v. Storm, 125 Mont. 346, 238 P.2d 1161 (1952)
Nebraska  Brott v. State, 70 Neb. 395, 97 N.W. 593, 63 L.R.A. 789 (1903)
New York  People v. Whitlock, 183 App. Div. 482, 171 N.Y.S. 109, 36 N.Y.C.R. 524 (1918)
[4] See 8 R.C.L. Criminal Law § 177 (1915)

16 C.J. Criminal Law § 1095 at 564-65 (1918)
22A C.J.S. Criminal Law § 646 at 533-34 (1961)
26 Am. Jur. Homicide § 331 at 379-80 (1940)
13 Am.Jur.2d Burglary § 44 (1964)
29 Am.Jur.2d Evidence §§ 378-79 (1967)
2 Elliott, Evidence § 1253 (1904)
1 Underhill, Criminal Evidence § 13 at 250-51 (5th ed. 1956)
5 Minn. L. Rev. 228 (1921)
33 Yale L. Rev. 216 (1923)
9 Wash. & Lee L. Rev. 248 (1952)
94 A.L.R. 413, 419-20 (1935)
And the cases cited in the above; nearly all majority cases stress that a proper foundation be laid.
[5] See State v. King, 144 La. 430, 80 So. 615 (1919); State v. Barnes, 289 S.W. 562 (Mo. 1926).
[6] In general e.g. see Richardson v. State, 145 Ala. 46, 41 So. 82, 8 Ann. Cas. 108 (1906); Rolen v. State, 191 Ark. 1120, 89 S.W.2d 614 (1936); People v. Pfanschmidt, 262 Ill. 411, 104 N.E. 804, 1915A Ann. Cas. 1171 (1914); State v. Adams, 85 Kan. 435, 116 P. 608, 35 L.R.A. (N.S.) 870 (1911); State v. Harrison, 149 La. 83, 88 So. 696 (1921); Harris v. State, 143 Miss. 102, 108 So. 446 (1926); State v. Rasco, 239 Mo. 535, 144 S.W. 449 (1912); State v. Steely, 327 Mo. 16, 33 S.W.2d 938 (1930); State v. Freyer, 330 Mo. 62, 48 S.W.2d 894 (1932); cf. McDonald v. State, 145 Ark. 581, 224 S.W. 976 (1920).
[7] Experience of the dog e.g. see 8 R.C.L. Criminal Law § 177 (1915); Holub v. State, 116 Ark. 227, 172 S.W. 878 (1916); Adams v. State, 149 Ark. 669, 235 S.W. 372 (1921); Schell v. State, 72 Ga. App. 804, 35 S.E.2d 325 (1945); State v. Evans, 115 Kan. 538, 224 P. 492 (1924); Alsept v. Commonwealth, 240 Ky. 395, 42 S.W.2d 517 (1931); Brummett v. Commonwealth, 263 Ky. 460, 92 S.W.2d 787 (1936); State v. King, 144 La. 430, 80 So. 615 (1919); Carter v. State, 106 Miss. 507, 64 So. 215 (1914); State v. Barnes, 289 S.W. 562 (Mo. 1926); State v. Yearwood, 178 N.C. 813, 101 S.E. 513 (1919); State v. McKinney, 88 W. Va. 400, 106 S.E. 894 (1921); cf. Kelly v. Commonwealth, 259 Ky. 770, 83 S.W.2d 489 (1935).
[8] Reliability of the dog e.g. see 8 R.C.L. Criminal Law § 177 (1915); Davis v. State, 46 Fla. 137, 35 So. 76 (1903); Mitchell v. State, 202 Ga. 247, 42 S.E.2d 767 (1964); State v. Adams, 85 Kan. 435, 116 P. 608, 35 L.R.A. (N.S.) 870 (1911); State v. King, 144 La. 430, 80 So. 615 (1919); Harris v. State, 143 Miss. 102, 108 So. 446 (1926); Hinton v. State, 175 Miss. 308, 166 So. 762 (1936); State v. Robinson, 181 N.C. 516, 106 S.E. 155 (1921); cf. McDonald v. State, 145 Ark. 581, 224 S.W. 976 (1920); State v. Moore, 129 N.C. 494, 39 S.E. 626, 55 L.R.A. 96 (1901).
[9] Reputation of the dog e.g. see Holub v. State, 116 Ark. 227, 172 S.W. 878 (1916); State v. Yearwood, 178 N.C. 813, 101 S.E. 513 (1919).
[10] Skill, habit of the dog e.g. see Harris v. State, 17 Ga. App. 723, 88 S.E. 121 (1916); Daugherty v. Commonwealth, 293 Ky. 147, 168 S.W.2d 564 (1943); State v. Rasco, 239 Mo. 535, 144 S.W. 449 (1912); Yearwood v. State, 178 N.C. 813, 101 S.E. 513 (1919); cf. Kelly v. Commonwealth, 259 Ky. 770, 83 S.W.2d 489 (1935).
[11] Training of the dog e.g. see Little v. State, 145 Ala. 662, 39 So. 674 (1905); Hargrove v. State, 147 Ala. 97, 41 So. 972, 119 Am. St. R. 60, 10 Ann. Cas. 1126 (1906); Gallant v. State, 167 Ala. 60, 52 So. 739 (1910); Allen v. State, 147 Ala. 97, 41 So. 972, 119 Am. St. R. 60, 10 Ann. Cas. 1126 (1906); Gallant v. State, 167 Ala. 60, 52 So. 739 (1910); Allen v. State, 8 Ala. App. 228, 62 So. 971, 1917E L.R.A. 730 (1913); Loper v. State, 205 Ala. 216, 87 So. 92 (1920); Moore v. State, 26 Ala. App. 607, 164 So. 761 (1935); Cranford v. State, 130 Ark. 101, 197 S.W. 19 (1917); Adams v. State, 149 Ark. 669, 235 S.W. 372 (1921); Doyle v. State, 166 Ark. 505, 226 S.W. 459 (1924); Davis v. State, 46 Fla. 137, 35 So. 76 (1903); Fite v. State, 16 Ga. App. 22, 84 S.E. 485 (1915); Evans v. State, 115 Kan. 538, 224 P. 492 (1924); Denham v. Commonwealth, 119 Ky. 508, 84 S.W. 538 (1905); Sprouse v. Commonwealth, 132 Ky. 269, 116 S.W. 344 (1909); Blair v. Commonwealth, 181 Ky. 218, 204 S.W. 67 (1918); Meyers v. Commonwealth, 194 Ky. 523, 240 S.W. 71 (1922); Alsept v. Commonwealth, 240 Ky. 395, 42 S.W.2d 517 (1931); Brummett v. Commonwealth, 263 Ky. 460, 92 S.W.2d 787 (1936); Daugherty v. Commonwealth, 293 Ky. 147, 168 S.W.2d 564 (1943); State v. King, 144 La. 430, 80 So. 615 (1919); Carter v. State, 106 Miss. 507, 64 So. 215 (1914); Harris v. State, 143 Miss. 102, 108 So. 446 (1926); Boatwright v. State, 143 Miss. 676, 109 So. 710 (1926); Hinton v. State, 175 Miss. 308, 166 So. 762 (1936); State v. Hunter, 143 N.C. 607, 56 S.E. 547, 118 Am. St. R. 830 (1907); State v. Spivey, 151 N.C. 676, 65 S.E. 995 (1909); State v. Norman, 153 N.C. 591, 68 S.E. 917 (1910); State v. Yearwood, 178 N.C. 813, 101 S.E. 513 (1919); Buck v. State, 77 Okla. Crim. 17, 138 P.2d 115 (1943); Copley v. State, 153 Tenn. 189, 281 S.W. 460 (1926); State v. McKinney, 88 W. Va. 400, 106 S.E. 894 (1921); cf. Sprouse v. Commonwealth, 132 Ky. 269, 116 S.W. 344 (1909).
[12] State v. Davis, 154 La. 295, 97 So. 449 (1923); State v. McIver, 176 N.C. 718, 96 S.E. 902 (1918); State v. Brooks, 1 Ohio Dec. Reprint 407, 9 West L.J. 1096.
[13] Brott v. State, 70 Neb. 395, 97 N.W. 593, 63 L.R.A. 789 (1903); People v. Pfanschmidt, 262 Ill. 411, 104 N.E. 804 (1914); cf. State v. Rasco, 239 Mo. 535, 144 S.W. 449 (1912); State v. Dickerson, 77 Ohio St. 34, 82 N.E. 969, 122 Am. St. R. 479, 11 Ann. Cas. 1181, 13 L.R.A. (N.S.) 341 (1907).
[14] Richardson v. State, 145 Ala. 46, 41 So. 82, 8 Ann. Cas. 108 (1906); Aaron v. State, 271 Ala. 70, 122 So.2d 360 (1960); State v. Adams, 85 Kan. 435, 116 P. 608, 35 L.R.A. (N.S.) 870 (1911); State v. Rasco, 239 Mo. 535, 144 S.W. 449 (1912); State v. White, 195 S.W. 994 (Mo. 1917); State v. Storm, 125 Mont. 346, 238 P.2d 1161 (1951); cf. Schell v. State, 72 Ga. App. 804, 35 S.E.2d 325 (1945). Also see: 8 R.C.L. Criminal Law § 177 (1915); 16 C.J. Criminal Law § 1095 at 564 (1918); 22A C.J.S. Criminal Law § 646 at 533 (1961); 29 Am.Jur.2d Evidence § 378 at 429 (1967); 9 Wash. & Lee L. Rev. 248 (1952).
[15] State v. Brown, 103 S.C. 437, 88 S.E. 21, 1916D L.R.A. 1295 (1916); also see Fite v. State, 16 Ga. App. 22, 84 S.E. 485 (1915).
[16] State v. Netherton, 133 Kan. 685, 3 P.2d 495 (1931); Harris v. State, 143 Miss. 102, 108 So. 446 (1920); State v. Steely, 327 Mo. 16, 33 S.W.2d 938 (1930); also see preceding footnote; cf. State v. Norman, 153 N.C. 591, 68 S.E. 917 (1910).
[17] See 16 C.J. Criminal Law § 1095 (1918)

22A C.J.S. Criminal Law § 646 (1916)
23 C.J.S. Criminal Law § 907 (1961)
26 Am. Jur. Homicide § 463 (1940)
29 Am.Jur.2d Evidence §§ 378-79 (1967)
30 Am.Jur.2d Evidence § 1146 (1967)
35 L.R.A. (N.S.) 870, 872 (1912)
1917E L.R.A. 726, 729
94 A.L.R. 413, 425-26 (1935)
1 Underhill, Criminal Evidence § 130 (5th ed. 1956)
2 Wharton, Criminal Evidence § 668 (12th ed. 1955)
5 Minn. L. Rev. 228, 229 (1921)
E.g. see Meyers v. Commonwealth, 194 Ky. 523, 240 S.W 71 (1922); State v. King, 144 La. 430, 80 So. 615 (1919); State v. Rasco, 239 Mo. 535, 144 S.W. 449 (1912); Parker v. State, 46 Tex. Crim. 461, 80 S.W. 1008, 108 Am. St. R. 1021, 3 Ann. Cas. 893 (1904).
[18] 94 A.L.R. 413, 415-16 (1935); see State v. McLeod, 196 N.C. 542, 146 S.E. 409 (1929).
[19] See: 8 R.C.L. Criminal Law § 177 (1915)

22A C.J.S. Criminal Law § 646 at 534-5 (1961)
29 Am.Jur.2d Evidence §§ 378-79 at 431 (1967)
1 Underhill, Criminal Evidence § 130 at 250-51 (5th ed. 1956)
E.g. see: Fite v. State, 16 Ga. App. 22, 84 S.E. 485 (1915); Mitchell v. State, 202 Ga. 247, 42 S.E.2d 767 (1947); Blair v. Commonwealth, 181 Ky. 218, 204 S.W. 67 (1918); Bullock v. Commonwealth, 249 Ky. 1, 60 S.W.2d 108, 94 A.L.R. 407 (1933); Harris v. State, 143 Miss. 102, 108 So. 446 (1926); State v. Shawley, 334 Mo. 352, 67 S.W.2d 74 (1933); State v. Wiggins, 171 N.C. 813, 89 S.E. 58 (1916); cf. State v. Dickerson, 77 Ohio St. 34, 82 N.E. 969, 122 Am. St. R. 479, 11 Ann. Cas. 1181, 13 L.R.A. (N.S.) 341 (1907).
[20] 8 R.C.L. Criminal Law § 177 (1915).
[21] Commonwealth v. LePage, Mass., 226 N.E.2d 200 (1967); State v. Rowland, 263 N.C. 353, 139 S.E.2d 661 (1967).
[22] See: 16 C.J. Criminal Law § 1584 at 774 (1918)

23 C.J.S. Criminal Law § 920 at 649 n. 37 (1961)
94 A.L.R. 413, 416, 423-25 (1935)
1 Wigmore § 177 n. 3 (3d. ed. 1940)
cf. 9 Wash. & Lee L. Rev. 248, 252 (1952) which points out that the wrong man may be identified; Meyers v. Commonwealth, 194 Ky. 523, 240 S.W. 71, 94 A.L.R. 413, 424 (1922).
[23] E.g. see State v. McKinney, 88 W. Va. 400, 106 S.E. 894 (1921); McClurg v. Brenton, 123 Iowa 368, 98 N.W. 881 (1904); State v. White, 195 S.W. 994 (Mo. 1917).
[24] See supra. footnote 17; also see 8 R.C.L. Criminal Law § 177 (1915); 16 C.J. Criminal Law § 1584 at 774 n. 59C (2) (1918); cf. State v. Moore, 129 N.C. 494, 39 S.E. 626, 55 L.R.A. 96 (1901).
[25] See supra. footnote 3; 1 Underhill Criminal Evidence § 130 at 250 (5th ed. 1956) feels that Minnesota would follow the minority, Crosby v. Moriarty, 148 Minn. 201, 181 N.W. 199 (1921). But Minnesota is categorized as a majority state because like South Carolina it has a statute which allows such evidence for the purpose of identification, see State v. Brown, 103 S.C. 437, 88 S.E. 21, 1916D L.R.A. 1295 (1916). But the proper foundation was not laid in Crosby, supra. See 94 A.L.R. 413, 415 (1935); 29 Am.Jur.2d Evidence § 378 (1967).
[26] See 2 Wigmore § 177 at 637 (3d ed. 1940)

1 Underhill, § 130 at 250 (5th ed. 1956)
5 Minn. L. Rev. 228 (1921)
33 Yale L. Rev. 216 (1923)
[27] 94 A.L.R. 413, 416 (1935)
[28] See: Bullock v. Commonwealth, 241 Ky. 799, 45 S.W.2d 449 (1932); Brott v. State, 70 Neb. 395, 97 N.W. 593, 63 L.R.A. 789 (1903); State v. Hall, 3 Ohio N.P. 125, 4 Ohio Super. & C.P. 147; also see McWhorter, "The Bloodhound as a Witness", 54 Am. L. Rev. 109 (1924); 94 A.L.R. 413, 418-19 (1935).
[29] 2 Wigmore, Evidence § 177 at 636-37 (3d ed. 1940).
[30] 94 A.L.R. 413, 416 (1935).
[31] See: 53 Am. Jur. Trial §§ 282, 610 (1945); 1 Underhill, Criminal Evidence § 130 at 250 (5th ed. 1956) (and cases cited therein).
[32] For a few cases following the majority view where the evidence was excluded see: Aaron v. State, 271 Ala. 70, 122 So.2d 360 (1960); McDonald v. State, 145 Ark. 581, 224 S.W. 976 (1920); Allen v. Commonwealth, 26 Ky. L. Rptr. 807, 82 S.W. 589 (1904); Sprouse v. Commonwealth, 132 Ky. 269, 116 S.W. 344 (1909); Blair v. Commonwealth, 171 Ky. 319, 188 S.W. 390 (1916); Bullock v. Commonwealth, 241 Ky. 799, 45 S.W.2d 449 (1932); Carter v. State, 106 Miss. 507, 64 So. 215 (1914); Copley v. State, 153 Tenn. 189, 281 S.W. 460 (1926).
[33] See, generally: 16 C.J. Criminal Law § 1095 at 565 (1918)

22A C.J.S. Criminal Law § 646 (1961)
58 Am. Jur. Witness § 648 (1948)
94 A.L.R. 413, 416-18 (1935)
McWhorter, "The Bloodhound as a Witness"
54 Am. L. Rev. 109, 113 (1920)
5 Minn. L. Rev. 228 (1921)
33 Yale L. Rev. 216 (1923)
9 Wash. & Lee L. Rev. 248, 253 (1952)
[34] See e.g. State v. Fixley, 118 Kan. 1, 233 P. 796 (1925); Meyers v. Commonwealth, 194 Ky. 523, 240 S.W. 71 (1922); State v. Freyer, 330 Mo. 62, 48 S.W.2d 894 (1932); cf. State v. Hall, 3 Ohio N.P. 125, 4 Ohio Super. & C.P. 147.
[35] See 9 Ill. L. Rev. 191 (1915) discusses People v. Pfanschmidt and states the minority view.
[36] An earlier Indiana case Stout v. State, 174 Ind. 395, 92 N.E. 161, 1912D Ann. Cas. 37 (1910) had not decided the question.
[37] An earlier Iowa case, McClurg v. Brenton, 123 Iowa 368, 98 N.W. 881 (1904) had not decided the question.
[38] See 94 A.L.R. 413, 416 (1935).
[39] It should be noted, however, that under Maryland Rule 729 d. 2., that in all jury trials conducted after September 1, 1967 such evidence must be received out of the presence of the jury. We do not now decide whether or not the violation of this rule would be reversible error. The present trial was begun on March 9, 1967 and concluded on March 10, 1967.